141 So.2d 837 (1962)
Dr. William K. GAUTHIER
v.
Dr. William MAGEE.
No. 547.
Court of Appeal of Louisiana, Fourth Circuit.
June 4, 1962.
*838 Cabral & Cabral, Harry R. Cabral, Jr., New Orleans, for plaintiff-appellant.
Becker, Morgan & Becker, William B. Morgan, II, Rudolph F. Becker, Jr., New Orleans, for defendant-appellee.
Before YARRUT, SAMUEL, and JOHNSON, JJ.
JOHNSON, Judge.
Dr. William K. Gauthier, a practicing physician, has sued Dr. William Magee, another practicing physician to collect a $60,000.00 note given by Dr. Magee in connection with a written contract which the two doctors entered into on January 21, 1959, for one year, with right of renewal "at the option of either party." The petition alleges that after the expiration the parties executed an extension until April 17, 1960; that defendant left the employ of plaintiff "before or on the expiration date of the contract under the terms of the extension," and that defendant continued to practice medicine in the City of New Orleans.
Defendant's answer admits the execution of the contract and the note; admits that plaintiff is the holder and owner of the note, but denies that he is holder in due course; admits that the contract was extended to April 17, 1960, but denies that defendant left plaintiff's employ before the expiration date.
The contract covers three closely typewritten pages with many provisions. Briefly stated, the contract provides that plaintiff shall furnish defendant office space, furniture and equipment free for the practice of medicine and that defendant was to assist plaintiff in the practice of medicine and in the management of the New Orleans Metairie Hospital Foundation. Plaintiff maintained the right to direct the practice undertaken by defendant, to designate the hours of work, to determine and collect the fees and agreed to pay defendant $8,000.00 a year, payable monthly, plus 25% of all fees from the patients treated by defendant. 10% of defendant's earnings was to be placed in escrow. If defendant withdrew before the end of the term the escrow deposit and defendant's uncollected accounts would go to plaintiff "as liquidated damages for the termination of the contract by Dr. Magee prior to the end of its term." If plaintiff terminated the agreement before the end of the term only the escrow deposit shall go to defendant and defendant's accounts receivable shall belong to plaintiff "as liquidated damages for the termination of the contract." Should the contract be terminated by mutual agreement, defendant shall receive the escrow deposit and the accounts receivable less 10% to plaintiff for handling. The contract contains stipulations on what shall be done in event of disability or death of either party, pertaining to annual leaves of absence, relieving plaintiff's widow or estate from purchasing new equipment for defendant, on the rights of the heirs of both parties to terminate the contract under certain conditions, and granting the right to either party to terminate the contract upon 90 days written notice. The general provisions referred to above are understandable and fairly well balanced as to mutuality, but giving plaintiff complete control of the professional activities of the defendant.
There are two paragraphs of the contract pertaining to the execution of the note by defendant, and it is necessary to consider and resolve them, if we can, in order to determine the enforceability of the note. We quote these two paragraphs in full, as follows:
"The following agreement is entered into in the event of the death of Dr. Gauthier, and/or in the event of the termination of employment by Dr. Magee for any reason whatsoever. In consideration of the employment of Dr. Magee by Dr. Gauthier in his medical practice, Dr. Magee does hereby agree to sign a hand-note for the sum of $60,000.00, payable on the basis of $1000.00 per month, in the event of the *839 death of Dr. Gauthier, and/or the termination of employment of Dr. Magee for any reason whatsoever.
"It is understood and agreed, however, that in the event of the death of Dr. Magee, or if he should leave the Greater New Orleans Area, and not practice medicine in said Area, for a period of five (5) years after the date of termination of his employment, that the note is then to be turned over to him, or his heirs, without payment thereon."
The only evidence presented by the record consists of copies of the contract, the renewal agreement, the note sued on and a written, signed stipulation of facts. We copy the stipulation agreed to by both counsel, as follows:
"It is stipulated and agreed by and between counsel for plaintiff and counsel for defendant that the following is a brief statement of the facts surrounding this case which would be brought out on the trial if a hearing were had, and which both counsel agree are the facts in this particular case.
"(1) That the said Dr. William Magee entered into a contract with Dr. William K. Gauthier on January 21, 1959, which contract is evidenced by the contract filed of record herein and marked for identification P-1.
"(2) That the said Dr. Magee and Dr. Gauthier did enter into a written extension of said contract on February 17, 1960, which extension was good until April 17, 1960, and which is filed of record and marked for identification P-2.
"(3) That the said Dr. Magee did sign a promissory note in the amount of $60,000.00, payable at the rate of $1,000.00 per month, with interest at the rate of six per cent (6%) per annum from maturity until paid, and 25% attorney's fees, said note being dated January 21, 1959, the original of said note being of record and filed herein and marked for identification P-3.
"(4) That the said Dr. Magee did begin practicing medicine in the City of New Orleans, Louisiana, on or about March 28, 1960, in the office of Dr. Joel Grey on South Carrollton Avenue, and that he did leave and terminate his employment with the said Dr. Gauthier on or about April 17, 1960.
"(5) That the sole issue to be decided by the court in this particular case is whether or not the note and the contract of employment identified as P-3 and P-1 are valid and enforceable under the laws of our state.
"(6) That defendant admits amicable demand was made upon him without avail."
We also quote here the signed agreement extending the contract after the expiration of the first year. This extension agreement appears to have been written by hand on paper with "From Kohlmann Gauthier, M. D." printed at the top. It is as follows:
 "February 17, 1960
"It is hereby agreed by and between Dr. Kohlman Gauthier and Dr. Wm. G. Magee that the contract between them dated Jan. 21, 1959 is hereby extended in all of its terms and conditions until April 17, 1960."
The note signed by Dr. Magee reads, in part, as follows: "$60,000.00
New Orleans, January 21 1959 As a part of the contract between Dr. Gauthier and Dr. Magee after date, I, we or any of us, the makers of this note, and the endorsers, guarantors and sureties hereon, promise to pay to the order of myself or bearer Sixty Thousand & no/100........................ Dollars until the sum of at the rate of One Thousand Dollars per month ...... Dollars has been paid in full, with interest at the rate of *840 -6- per cent. per annum from maturity until paid."
Counsel for plaintiff contends that defendant breached the contract by withdrawing from Dr. Gauthier's employment before its expiration date while the contract was in force and effect. There is no evidence that defendant did that. Defendant admits in his answer and in the stipulation that he began treating patients at a Dr. Grey's office about March 28, 1960, but the stipulation says that defendant did not discontinue his practice with Dr. Gauthier under this contract until its expiration date on April 17, 1960. There is not one word of evidence to the contrary. There is no provision in the contract that prohibited the defendant from treating patients at places other than plaintiff's office or hospital.
Counsel for plaintiff further argues that plaintiff expended a large investment of money to set up the practice for defendant and likens the promissory note and the provisions of the contract calling for its execution to a secondary obligation or penal clause, according to plaintiff liquidated damages in event the contract was terminated unlawfully by Dr. Magee. The only allegation in the petition on this subject is that defendant "left the employ of plaintiff before or on the expiration date of the contract under the terms of the extension. * * *" It is not alleged that defendant left unlawfully or forced the termination of the contract. The stipulation in evidence states that defendant left plaintiff's employ at the expiration date. The extension to April 17, 1960, was by agreement in writing. There is no evidence to suggest why the parties did not extend it for another full year and there is no ground on which to level any charge of fault at this defendant, as counsel for plaintiff indicates. It is equally as reasonable to say or presume that the termination date was arbitrarily or illegally forced by the plaintiff. The contract expired by lapse of time without any renewal and there was nothing else that either party could do except to end their joint practice.
The general terms of the contract make it clear that Dr. Magee obligated himself to assist the plaintiff in the practice of medicine and in the operation of a hospital. The relationship of the parties was one of employer and employee, as counsel for plaintiff alleged in the petition. There was no partnership by this agreement, as counsel argues in his brief. The contract in all its other provisions for the employment of Dr. Magee is entirely clear, understandable and enforceable. This can not be said of the two paragraphs calling for the execution of the note, quoted in full above. In resolving the purposes and provisions of an agreement effect must be given to every part if possible. McKinney v. American Security Life Insurance Co., La.App., 76 So.2d 630; Long-Bell Petroleum Co. v. Tritico, 216 La. 426, 43 So. 2d 782; Reuter v. Reuter's Succession, 206 La. 474, 19 So.2d 209; and Monteleone v. Airey, La.App., 57 So.2d 257.
The provisions of this contract pertaining to the note sued on are unrelated to the other portions. These two paragraphs quoted above are the only parts of the contract in which the note is referred to. The language of these two paragraphs is so nebulous and vague that it is impossible to understand clearly why the note was given or what event would mature it. It says that the consideration of the $60,000.00 note was "the employment of Dr. Magee by Dr. Gauthier in his medical practice." It is impossible to believe any person in his right mind would sign a note for $60,000.00 just to be employed by somebody, and run the risk of the note maturing by the termination of the employment by either party. Counsel says the note is a secondary or penal obligation for liquidated damages to plaintiff. The contract expressly provides for liquidated damages *841 in at least two other understandable conditions. While good doctors today have established a reputation of making much money, certainly $60,000.00 is a lot of damage. If a secondary obligation in a contract is null for any reason, its nullity does not nullify the prime obligation. LSA-C.C. art. 2123. Regardless of whether the provisions calling for the note be a primary or secondary obligation, it is null and unenforceable.
The Courts have a right to consider the reasonableness of the amount of a penal clause. An interesting article by Edward B. Benjamin, Jr., on the subject of liquidated damages in 25 T.L.R. 407 (410) cites several cases which he says disregard and refuse to enforce the stipulated penalties entirely as being unreasonable. In addition to the uncertainties of the contract provisions pertaining to this note, as a reason to refuse to enforce payment of the note, another reason would be the excessive amount of it, in so far as this record is concerned. There is not a word of evidence to justify the amount.
The second paragraph quoted above from the contract seems to enjoin Dr. Magee, the employee, from practicing medicine in New Orleans for five years after the ending of this contract. If that be the purpose, by that language it is completely illegal and unenforceable, being in violation of LSA-R.S. 23:921, which says that:
"No employer shall require or direct any employee to enter into any contract whereby the employee agrees not to engage in any competing business for himself, or as the employee of another, upon the termination of his contract of employment with such employer, and all such contracts, or provisions thereof containing such agreement shall be null and unenforceable in any court."
For these reasons the judgment appealed from is affirmed.
Affirmed.