158 So.2d 63 (1963)
Gladys Simmons JOHNSON, Plaintiff-Appellant,
v.
COMBINED INSURANCE COMPANY OF AMERICA, Defendant-Appellee.
No. 5966.
Court of Appeal of Louisiana, First Circuit.
November 12, 1963.
Watts & Crain, by Hillary J. Crain, Franklinton, for appellant.
Talley, Anthony, Hughes & Knight, by Charles M. Hughes, Bogalusa, for appellee.
Before ELLIS, LOTTINGER, HERGET, LANDRY and REID, JJ.
REID, Judge.
This is a suit brought by plaintiff, Gladys Simmons Johnson, widow of George S. Simmons, Jr., against Combined Insurance Company of America for $1200.00 for the alleged accidental death of George S. Simmons Jr., who was killed on January 7, 1959 by a pistol shot in the Town of Franklinton, Washington Parish, Louisiana.
Defendant insurance company issued an accident indemnity policy No. B657521 on the life of the deceased, George S. Simmons Jr., and plaintiff Gladys Simmons Johnson, at that time Gladys Simmons was named beneficiary, which policy was annexed to the petition.
Defendant, Combined Insurance Company of America, filed a motion for summary judgment together with a certified copy of the Coroner's Report of the death of George Simmons Jr., alleging the pleadings together with the Report show that there are no genuine issues as to any material facts. Plaintiff did not file any counter-affidavits in opposition to this motion.
The motion for summary judgment was duly tried and the Judge of the Lower Court, with written reasons, sustained the motion and dismissed plaintiff's suit with prejudice at her cost.
From this judgment plaintiff prosecutes this appeal.
The Coroner's Report shows the deceased George Simmons Jr., met his death on January 7, 1959 from a .38 caliber pistol wound in the abdomen. The pistol was fired by O. D. Wood, night marshal of Franklinton, in the line of duty. There were three sworn statements attached to the Coroner's Report, one by Mr. Wood, another by Virgil *64 Page, and another by H. B. (Shorty) Hughes. According to the statement of Mr. Wood he was called by the Jailer, who informed him there was a drunk at Wood's Malt Stand fighting and disturbing the peace. Mr. Wood went to the Malt Stand and found Simmons there in a drunken condition. Simmons admitted he was drunk and cursed the night marshal several times and told him he was going to kill him. He drew a knife and attempted to cut Mr. Wood, who then drew his gun and made Simmons drop the knife. He forced Simmons into his car to bring him to jail during which time he constantly kicked the door, obviously trying to escape. To restrain him Mr. Wood was forced to hit him a couple of times. When they arrived at the jail Simmons again attacked him and tried to get his gun. Mr. Wood shot at the floor, trying to scare Simmons; then attempted to shoot him in the leg, but Simmons jumped and the shot struck him in the abdomen, causing his death.
H. B. (Shorty) Hughes testified he was assisting Mr. Wood in attempting to put Simmons in a cell when Simmons attacked Mr. Wood, hitting him several times. Hughes grabbed Simmons around the neck but Simmons jerked away and struck him in the head. Simmons again tried to acquire Wood's pistol and Wood then fired once at the floor to scare Simmons, and then fired again and struck Simmons in the abdomen.
The sworn statement of Virgil Page annexed to the Report attests he was in the bull pen when Mr. Wood brought Simmons in. Simmons was cursing Wood for having taken his knife. "They then started to put Simmons in a cell, and he stopped to speak to me, and at that time Mr. Wood pushed him and hit him with a black jack. Simmons started fighting and was getting the best of Mr. Wood." Mr. Hughes ran in and attempted to hold Simmons who eluded him and started fighting Wood again. Wood drew his gun and shot once into the floor and then shot again and Simmons crumpled to the floor.
The appellant assigns two specifications of error, as follows:
1. The Trial Judge erred in granting defendant a summary judgment even if the facts alleged by defendant were, for the sake of argument, admitted.
2. The Trial Judge erred in granting defendant's motion for a summary judgment when there exist an issue of material fact.
In support of this contention, plaintiff relies upon Brooks v. Continental Casualty Company, 13 La.App. 502, 128 So. 183. Therein a police officer informed of a robbery, was looking for two suspects about 9 o'clock at night. He came across two men who tallied with the description he had of the holdup men and he attempted to stop them. He fired four shots and one struck Moses Brooks, the insured. The officer stated he would not have fired had he realized it was Brooks, and not one of the holdup men; the only reason he fired was because he believed they were the holdup men, and his intention was to stop them by hitting them in the leg, which is the usual method used by police officers to stop fleeing criminals.
The Court held:
"In this case the means employed, that is, the firing of the gun, was intentional, but it is clearly shown that the purpose Legendre, the deputy sheriff, had in mind at the time, was merely to shoot the fugitives in the legs to stop them in their flight. He certainly did not intend to strike Brooks in the back, and to take his life. Though the shooting was intentional, the killing or the result was altogether unintentional and accidental, as was the case with Brown who had intentionally taken the chloroform, but had `unintentionally inhaled too much.'"
See also Brown v. Continental Casualty Company, 161 La. 229, 108 So. 464, 45 A.L.R. 1521, and Schonberg v. *65 New York Life Insurance Company, 235 La. 461, 104 So.2d 171.
The judgment held that the plaintiff was entitled to judgment against the insurance company on the grounds that the death was accidental. Although the shooting was intentional the result was unintentional and accidental.
Defendant relies upon the case of Thom v. Metropolitan Life Insurance Company, La.App., 2 So.2d 269. These cases are distinguishable because in the Thom case it was found that the deceased was armed with a pistol and intended to kill his son. He was definitely the aggressor and there was no question but that the killing was admittedly intentional by the son in order to save his own life. The Court in the Thom case, supra held:
"Our conclusion is that the insured was the aggressor and by his own act precipitated the difficulty which resulted in his death. Therefore, his beneficiaries cannot successfully urge that, within the meaning of the policies, the insured's death was brought about by accidental cause."
See also Barham v. State Life Insurance Company of Indiana, La.App., Second Circuit, 1931, 17 La.App. 253, 135 So. 730; Campbell v. Metropolitan Casualty Insurance Company, La.App., First Circuit, 1937, 176 So. 233.
The appellant urges that there was an issue of material fact in the affidavits of the defendant attached to the motion for summary judgment as to who was the aggressor. However, in view of the affidavits we are satisfied Simmons was the aggressor.
Plaintiff filed no counter-affidavits opposing the motion for summary judgment. For these reasons we do not believe plaintiff-appellant can raise the issue regarding any material fact. Our Courts have repeatedly held in the absence of any counter-affidavits it must be assumed there was no dispute with respect to the facts set forth in the affidavits. See Article 966 et seq., LSA-C.C.P., Goodart v. Maryland Casualty Company, La.App., 139 So.2d 567, and Rushing v. Weyerhaeuser Company, La.App., 144 So.2d 420.
For these reasons we are in accord with the judgment of the Lower Court and same is affirmed.
Affirmed.