236 So.2d 859 (1970)
William E. McCRAY and William P. Cloyd, Jr., Plaintiffs-Appellees,
v.
James H. BLACKBURN, Defendant-Appellant.
No. 3081.
Court of Appeal of Louisiana, Third Circuit.
May 27, 1970.
Rehearing Denied June 25, 1970.
*860 McBride & Brewster, by Norman P. Foret and Ronald L. Menville, Lafayette, for defendant-appellant.
Davidson, Meaux, Onebane & Donohoe, by John G. Torian, II, Lafayette, for plaintiffs-appellees.
Before TATE, SAVOY and MILLER, JJ.
MILLER, Judge.
Doctors McCray and Cloyd seek to enforce the terms of their partnership agreement with Dr. Blackburn. The trial court granted plaintiffs' motion for summary judgment and awarded $12,000, to plaintiffs. Defendant's motion for summary judgment was denied. Defendant appealed.
In September of 1967, James H. Blackburn, M.D. with a specialty in psychiatry, moved to Lafayette, Louisiana to practice his specialty with the Neuropsychiatric Clinic of that City. He was paid a salary *861 by the partnership then composed of William E. McCray, M.D. and William P. Cloyd, Jr., M.D., both psychiatrists. In November of 1968, the three physicians signed a partnership agreement providing that:
"Each partner hereby expressly agrees and covenants that, if he should voluntarily withdraw from this partnership and thereafter practice competitively, he will within thirty (30) days of commencing competitive practice, pay to the other remaining partners the total sum of $12,000.00 as liquidated damages therefor under this agreement. But in the event he withdraws at the request of the other partners or if the partnership is dissolved by mutual consent, he shall not be liable to pay such damages if he practices competitively. For the purpose of this agreement, the words `practice competitively' shall mean practicing his profession, by himself or with others, as principal partner or employee within the Parish of Lafayette during the twenty-four month period immediately following his withdrawal from this partnership."
Dr. Blackburn testified by deposition that he was familiar with the terms of the partnership agreement; that he left the Neuropsychiatric Clinic during the last week of February, 1969, and commenced his practice of psychiatry in Lafayette during the first week of March, 1969; that he made public announcements of the removal of his office and had his secretary telephone his patients to advise them of the change; and that he took copies of various charts of patients he had seen as well as his appointment books. He acknowledged that the Neuropsychiatric Clinic offered to give him copies of any of the records that he wanted and that neither Dr. McCray nor Dr. Cloyd had hindered him in his practice since the move.
Dr. Blackburn's testimony makes it clear that he was not in financial need at the time he signed the partnership agreement because he was able to fill his own schedule with direct referrals. He also acknowledged that he was a source of income to the partnership and that his leaving would create an economic loss to the partnership.
Dr. Blackburn attempts to avoid legal responsibility for the liquidated damages which he agreed to pay, contending that the liquidated damage clause is null and unenforceable as being in violation of public policy and LSA-R.S. 23:921.
LSA-R.S. 23:921 provides:
"No employer shall require or direct any employee to enter into any contract whereby the employee agrees not to engage in any competing business for himself, or as the employee of another, upon the termination of his contract of employment with such employer, and all such contracts, or provisions thereof containing such contracts, or provisions thereof containing such agreement shall be null and unenforceable in any court, provided that in those cases where the employer incurs an expense in the training of the employee or incurs an expense in the advertisement of the business that the employer is engaged in, then and in that event it shall be permissible for the employer and employee to enter into a voluntary contract and agreement whereby the employee is permitted to agree and bind himself that at the termination of his or her employment that said employee will not enter into the same business that employer is engaged over the same route or in the same territory for a period of two years. As amended Acts 1962, No. 104, §§ 1, 2."
The contract under consideration is not an employment contract. It is a partnership agreement which applied equally to all three partners. Had Dr. McCray or Dr. Cloyd voluntarily withdrawn, the $12,000.00 liquidated damages would have been owed to the remaining partners. Paragraph 15 appears fair in all respects to all partners. LSA-R.S. 23:921 does not apply.
*862 Appellant argues that public policy prohibits non-competitive agreements, citing National Motor Club of Louisiana, Inc. v. Conque, 173 So.2d 238, 240, 1 (La.App. 3d Cir. 1965). The Court was there considering an employment contract and not a partnership agreement. Under these facts, we find no public policy prohibiting the terms of this partnership agreement.
We adopt as our own the following reasons from the trial judge's opinion:
"Agreements legally entered into have the effect of laws on those who have formed them and Courts are bound to give legal effect to contracts according to the true intent of the parties. In the case now before the Court, the stipulations for the payment of liquidated damages were a lawful promise based on reasonable grounds and supported by consideration."
See Martin-Parry Corporation v. New Orleans Fire Detection Service, 221 La. 677, 60 So.2d 83 (1952); Aetna Finance Company v. Adams, 170 So.2d 740 (La.App. 1 Cir. 1965). LSA-C.C. 1901, 1945, 1965.
Appellant next contends that by amended answer he raised a new issue that plaintiffs did not produce affidavits to rebut; that there is a disputed issue of fact and therefore the summary judgment in favor of plaintiffs must be set aside.
The chronology of events gives some insight into this issue. Suit was filed August 1, 1969. Answer was promptly filed admitting the existence of the contract which was attached to the answer. On the basis of that contract, defendant filed a motion for summary judgment. Defendant therefore contended that there was no factual dispute. Plaintiffs then took Dr. Blackburn's deposition (on September 20, 1969). On October 13, 1969, plaintiffs moved for summary judgment based on the contract which defendant had filed, defendant's pleadings and Dr. Blackburn's testimony. On October 22, 1969 defendant filed an amended answer alleging in the alternative first, that the agreement attached to his original answer was terminated with the approval and consent of all parties and in the further alternative, that the agreement which defendant attached to the original answer was superseded by an oral agreement. These allegations were in no way supported by any affidavit nor by Dr. Blackburn's testimony which had been taken by deposition attended by defendant's counsel.
In his written reasons, the trial judge stated:
"Following the filing of the plaintiffs' motion for summary judgment the defendants in each suit filed an amended answer alleging that the agreements involved were terminated with the approval and consent of all parties and therefore, contended that the provisions for liquidated damages were inoperative. The facts alleged in the amended answers are not supported by affidavits and are not supported by the depositions which are filed in each suit."
Appellant applied for new trial, but did not attempt to support his pleadings even though the trial court had specifically directed defendant's attention to this omission.
When a motion for summary judgment is filed, a party cannot rely solely on his pleadings. LSA-C.C.P. 966 as amended Acts 1966, No. 36 § 1. The 1966 comment under this article (which also applies to C. C.P. 967) states:
"* * * The amendments of these two articles were adopted to: (1) permit the trial judge to consider answers to interrogatories when deciding the motion for summary judgment; and (2) require the adverse party against whom a motion for summary judgment had been taken to file counter-affidavits, and not permit him to rely on the bare allegations of his pleadings." (Emphasis added.)
That this comment means what it says is made clear by the unmistakable language *863 of LSA-C.C.P. 967, which in part provides:
"When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleadings, but his response, by affidavit or otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him."
See also Welsh Southern Oil Company v. Scurlock Oil Company, 201 So.2d 376 (La. App. 3d Cir. 1967); Mexican Gulf Fisheries, Inc. v. Aetna Insurance Company, 220 So.2d 141 (La.App. 1 Cir. 1969); Johnson v. Combined Insurance Company of America, 158 So.2d 63 (La.App. 1 Cir. 1963).
Defendant cites Perry v. Reliance Insurance Company of Philadelphia, 157 So.2d 903, 908 (La.App. 1 Cir. 1963), contending that upon trial of a motion for summary judgment, the initial burden of proof rests upon movant to convincingly show (either from the pleadings or by the production of affidavits, depositions or other admissible proof) the absence of a genuine issue of material fact between the adverse parties; that until movant discharges the initial burden of proof the obligation of countering by plaintiff does not arise.
The Perry case was decided prior to the 1966 amendments to LSA-C.C.P. 966 and 967. Additionally however, in this case the deposition of defendant did not in any way support and indeed tends to negate the allegations of the amended answer that the partnership contract was terminated by mutual agreement or alternatively that it was superseded by an oral agreement. These allegations were also contradicted by defendant's motion for summary judgment based on the partnership contract attached to his answer.
When defendant failed to file an affidavit or otherwise support the allegations of his amended answer, the trial court was supported in its finding that there was no material issue of fact.
The judgment of the trial court is affirmed. All costs are to be paid by defendant-appellant.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.