236 So.2d 863 (1970)
William E. McCRAY and William P. Cloyd, Jr., Plaintiffs-Appellees,
v.
Jimmie D. COLE, Defendant-Appellant.
No. 3082.
Court of Appeal of Louisiana, Third Circuit.
May 27, 1970.
Rehearing Denied June 25, 1970.
*864 McBride & Brewster, by Norman P. Foret, and Ronald L. Menville, Lafayette, for defendant-appellant.
Davidson, Meaux, Onebane & Donohoe, by John G. Torian, II, Lafayette, for plaintiffs-appellees.
Before TATE, SAVOY and MILLER, JJ.
MILLER, Judge.
This is a companion suit to McCray v. Blackburn, La.App., 236 So.2d 859, handed down this date. Many facts are identical, but the relationship between the parties differs in that Dr. Jimmie D. Cole is a psychologist rather than a physician. There was no reciprocal undertaking by Drs. McCray and Cloyd to pay liquidated damages to Dr. Cole, and Dr. Cole signed the contract when he was first employed by the Neuropsychiatric Clinic.
Doctors McCray and Cloyd seek to enforce the terms of their agreement with Dr. Cole. The trial court granted plaintiff's motion for summary judgment and awarded $6,000 to plaintiffs. Defendant's motion for summary judgment was denied. Defendant appealed.
*865 On August 1, 1967, Dr. Cole, Ph.D. clinical psychologist, entered into an agreement with Drs. McCary and Cloyd obligating himself to devote full time to plaintiffs' psychiatric clinic for a salary of $1,600 per month plus one-half of his billings that exceeded $30,000 per year. In addition to this compensation, the clinic furnished office space, secretarial services, 28 days annual vacation with pay and four weeks sick leave without loss of pay.
The part of the contract in question provides:
"It is agreed that this association shall be effective in all of its terms and conditions as of August 1, 1967 and shall continue until such time as either party gives the other party four months written notice of termination. It is further agreed that in the event James Cole, Ph. D. should withdraw from this association and should commence the practice of psychology within the Parish of Lafayette, Louisiana, then in that event within thirty days after his beginning to practice he will pay into the clinic the sum of $6,000.00 as liquidated damages. However, the provision for liquidated damages shall not apply in the event James Cole, Ph.D. is given notice of termination of this agreement by the clinic; then in that event James Cole, Ph.D. shall have no obligation to the clinic whatsoever. This provision shall not apply after James Cole, Ph.D. has refrained from practice of psychology within the Parish of Lafayette, Louisiana for a period of two years."
By discovery deposition, Dr. Cole testified that he understood this provision of the contract; that he was the only clinical psychologist at the clinic and was available to the clinic whenever a psychologist was needed; that patients were referred to him by the clinic and that he frequently consulted with the psychiatrists at the clinic; that he voluntarily withdrew from the Neuropsychiatric Clinic and immediately began the practice of his profession in Lafayette; that neither Dr. McCray nor Dr. Cloyd have hindered him in his practice; that they have referred patients to him in his new office; that he has been furnished copies of all records on request; and that he took his appointment book.
Dr. Cole contends that the liquidated damages provision is null as being against public policy and in violation of LSA-R.S. 23:921.
This statute provides that:
"No employer shall require or direct any employee to enter into any contract whereby the employee agrees not to engage in any competing business for himself, or as the employee of another, upon the termination of his contract of employment with such employer, and all such contracts, or provisions thereof containing such contracts, or provisions thereof containing such agreement shall be null and unenforceable in any court, provided that in those cases where the employer incurs an expense in the training of the employee or incurs an expense in the advertisement of the business that the employer is engaged in, then and in that event it shall be permissible for the employer and employee to enter into a voluntary contract and agreement whereby the employee is permitted to agree and bind himself that at the termination of his or her employment that said employee will not enter into the same business that employer is engaged over the same route or in the same territory for a period of two years. As amended Acts 1962, No. 104, §§ 1, 2."
Under certain conditions this statute prohibits an employer from requiring an employee to agree not to engage in any competing business. The contract which Dr. Cole attached to his answer (and which formed the basis for his motion for summary judgment), did not prohibit him from practicing in Lafayette. He has actively practiced his profession in that area from the day he voluntarily withdrew from the clinic.
*866 Plaintiffs are not attempting to prohibit Dr. Cole from practicing in Lafayette, but rather they seek the liquidated damages which Dr. Cole agreed to pay. Contracts providing for liquidated damages where the employee competes against his former employer have been enforced in Aetna Finance Company v. Adams, 170 So.2d 740 (La.App. 1 Cir. 1964), and World Wide Health Studios, Inc. v. Desmond, 222 So.2d 517 (La.App.2d Cir. 1969).
In the Adams case, the employment contract provided that for a period of one year after the termination of his employment, Adams would not compete with the finance company within a radius of twenty-five miles of any of plaintiff's offices. Adams agreed to pay liquidated damages of $2,000 if he violated this provision.
Adams' defense to the suit for liquidated damages was identical to that raised here by Dr. Cole. First, he contended that the contract was against public policy and second that it violated LSA-R.S. 23:921. In upholding the provision for liquidated damages in the Adams case, the Court stated at 170 So.2d 740, 744:
"In Martin-Parry Corporation v. New Orleans Fire Detection Service, 221 La. 677, 60 So.2d 83, the Supreme Court of this State made these observations we deem particularly appropriate to the issues herein involved:
"Article 1901 of the LSA-C.C. declares that agreements legally made have the effect of laws on those who have formed them and that they must be performed in good faith. This principle is repeated in Article 1945, (dealing with the interpretation of agreements) which states that the courts are bound to give legal effect to contracts according to the true intent of the parties when the words used are explicit and lead to no absurb (sic) consequences.
"Accordingly, as long as the object of the contract is lawful, it is the duty of the court to enforce it as written. In the case at bar, the stipulation of the defendant that he would refrain, after the termination of the contract, from capturing for his own account or for others the employees and dealers of the plaintiff was a perfectly lawful promise based on reasonable grounds and supported by valuable consideration, i.e., the salary and emoluments to be obtained in the position of Branch Manager.'
Admittedly Defendant upon his termination of employment with Plaintiffs engaged in a competitive business, contrary to his covenant. Thus Plaintiffs are entitled to the stipulated damages of $2,000.00 for such violation."
In Desmond, the court upheld the employee's contract to pay liquidated damages of $500 per month if he competed with his employer within 100 miles of the employer's health studio.
It is suggested that the Adams and Desmond cases do not apply for they were based on the finding that LSA-R.S. 23:921's prohibition was expressly relaxed (by 1962 amendment) "where the employer incurs an expense in the training of the employee or incurs an expense in the advertisement of the business that the employer is engaged in." We agree that in both Adams and Desmond, the employer did incur an expense to train and advertise the employee. To that extent our case is different, for Drs. McCray and Cloyd did not train Dr. Cole or advertise their professional association.
However, we return to our position that the provision in the contract here at issue, is not of itself prohibited by the terms of LSA-R.S. 23:921. There is no provision in the statute prohibiting liquidated damages where the employee competes with his former employer. If contracts to pay liquidated damages where the conditions are supported by adequate consideration are against public policy, the legislature should declare it. LSA-R.S.
*867 23:921 in its present form does not so declare.
If Dr. Cole's contract is not supported by adequate consideration and has the effect of prohibiting him from engaging "in any competing business for himself, or as the employee of another. Upon the termination of his contract of employment with such employer," then the terms of this statute declare it to be null.
To determine whether or not a contract prohibits an employee from "competing", we must consider the reasonableness of the restriction and whether or not the provision is supported by adequate consideration. We think it apparent that liquidated damages of $50,000 in this case would not be supported by adequate consideration and would have the effect of prohibiting Dr. Cole from practicing within twenty-five miles of Lafayette. As such it would be in violation of LSA-R.S. 23:921. On the other hand, it is apparent that liquidated damages of $10 would be supported by adequate consideration and therefore would not have the effect of prohibiting Dr. Cole from practicing in that area, and would be enforceable.
We are not here concerned with the ability of this psychologist to pay. Rather we are concerned with the reasonableness of the contract and whether or not the conditions were supported by consideration.
The issue is: Is $6,000 liquidated damages reasonable in this case, and was it supported by adequate consideration?
In considering the reasonableness of the $6,000 liquidated damages, we find these factors important. 1. The parties are professional people. 2. There was no disparity in the bargaining power of the parties. 3. The amount of liquidated damages is in line with the actual loss all parties would expect employer to sustain in the event Dr. Cole voluntarily withdrew but remained to practice in Lafayette, and in line with the actual gain to be expected by Dr. Cole should he voluntarily withdraw, but remain in Lafayette to practice. 4. Liquidated damages were not be to paid if employer terminated the employment.
Dr. Cole was more than a mere employee under the terms of his contract. His professional status was recognized. Before contracting with Drs. McCray and Cloyd, Dr. Cole was a psychologist with a management consultant firm in Dallas. When he moved to Lafayette, he could have practiced his profession there or elsewhere without associating with any clinic. Instead, he chose to enjoy the benefits which admittedly flowed from his connection with the Neuropsychiatric Clinic. His association with the Neuropsychiatric Clinic provided him with greater opportunities to meet referring physicians and patients than would result from opening his own professional office. His agreement provided these benefits together with salary, vacation and sick leave benefits while underwriting the substantial office, secretarial, and other overhead expenses related to opening and operating a professional office. He enjoyed the benefits of this office for more than one year.
What additional expenses would be incurred by Drs. McCray and Cloyd should Dr. Cole voluntarily withdraw but remain in the Lafayette area? Psychiatrists refer patients to Psychologists and Psychologists refer patients to Psychiatrists. Both professions consult the other. It naturally flows that both benefit from a close association. When Dr. Cole made this agreement and when he withdrew, there was no psychologist employed by the clinic. There is a limited need for services of psychologists. Had Dr. Cole withdrawn and moved from the Lafayette area, it would be easier and less costly to interest another psychologist in moving to Lafayette to work for the Neuropsychiatric Clinic. We find $6,000 in line with the actual loss all parties would expect Drs. McCray and Cloyd to sustain should Dr. Cole leave the clinic and practice in Lafayette.
What gain was to be expected by Dr. Cole should he voluntarily withdraw but *868 remain in Lafayette to practice? He would not then experience the lean times visited on professional people who move into a new city to begin practice. At the time of his withdrawal he had a broad field of acquaintance of both referring physicians and patients. We find the $6,000 sum in line with the actual gain expected to flow from Dr. Cole's leaving his employer and immediately opening his private practice in Lafayette. Who is to suggest that it would not cost him $6,000 to establish in some other City the position he held in Lafayette at the time of his voluntary withdrawal.
We find the terms of the contract fair and reasonable to all parties. We adopt as our own the following reasons from the trial judge's opinion:
"Agreements legally entered into have the effect of laws on those who have formed them and Courts are bound to give legal effect to contracts according to the true intent of the parties. In the case now before the Court, the stipulations for the payment of liquidated damages were a lawful promise based on reasonable grounds and supported by consideration."
See Martin-Parry Corporation v. New Orleans Fire Detection Service, 221 La. 677, 60 So.2d 83 (1952). LSA-C.C. 1901, 1945, 1965.
Defendant cites the cases of Gauthier v. Magee, 141 So.2d 837 (La.App. 4th Cir. 1962) and National Motor Club of Louisiana v. Conque, 173 So.2d 238 (La.App. 3d Cir. 1965). We distinguish these cases.
In Gauthier, the court held invalid a $60,000 note signed by one physician in favor of the employing physician. The court noted that the language of the contract is so nebulous and vague that it is impossible to understand why the note was given or what event would mature it. The court held that LSA-R.S. 23:921 invalidated that part of the contract which expressly forbid the employed physician from practicing in New Orleans for five years after terminating his employment.
The contract in this case does not prohibit Dr. Cole from practicing in Lafayette and the provisions for liquidated damages are specific. There is no suggestion here that the provision for liquidated damages was not understood.
In Conque, the court set aside the trial court's injunction in favor of the National Motor Club prohibiting its former district manager from competing with National Motor Club. It was held that the noncompetitive agreement[1] was not "lawful" because it was not supported by valid training and advertising expenses undertaken by National Motor Club. It was acknowledged that the result reached was "to some extent conflicting with Aetna Finance Company v. Adams, 170 So.2d 740" (La. App. 1 Cir. 1965).
There was no provision for liquidated damages in the Conque case. Additionally, the court there was concerned about the "disparity in bargaining power, under which an employee, fearful of losing his means of livelihood, cannot readily refuse to sign an agreement which, if enforceable, amounts to his contracting away his liberty to earn his livelihood in the field of his experience except by continuing in the employment of his present employer." 173 So.2d 238, 241. As hereinabove noted, there was no disparity of bargaining power present in this case. All terms of this contract appear fair and reasonable to all parties.
Appellant next contends that by amended answer he raised new issues which were not rebutted by plaintiffs; that there is a disputed issue of fact and therefore the summary judgment in favor of plaintiffs must be set aside.
*869 The reasons this day handed down in the companion case of McCray v. Blackburn, La.App., 236 So.2d 859 are applicable to this phrase of this case.
The judgment of the trial court is affirmed. All costs are to be paid by defendant-appellant.
Affirmed.

On Application for Rehearing
En Banc. Rehearing denied.
CULPEPPER, Judge, dissenting from the denial of defendant's application for rehearing.
In my view, the employment contract between plaintiffs and defendant is an absolute nullity. It is against the public policy of this state as expressed in LSA-R.S. 23:921.
The purpose of this statute is to protect the right of the employee to work at his trade wherever and for whomever he chooses. Because of a disparity in bargaining power, the employee often will sign an agreement relinquishing his right to quit and find a better job. The result could be virtual economic slavery. To suppress this evil, our legislature has by statute expressly forbidden such contracts as being against public policy. See National Motor Club of Louisiana, Inc. v. Conque, La.App., 173 So.2d 238 (3rd Cir. 1965).
With this public policy in mind, let us examine the contract of employment in the present case. The agreement provides that if the defendant leaves his employment and engages in competition with the plaintiffs, "then in that event within thirty days after his beginning to practice he will pay unto the clinic the sum of $6,000 as liquidated damages." The majority opinion holds that since the contract does not contain a specific agreement "not to engage in any competing business", but, instead, provides for liquidated damages of $6,000, there is no violation of the statute. I strongly disagree.
Liquidated damages can be just as absolute a deterrent as an injunction. The employee who cannot pay liquidated damages is deprived of his right to work where he chooses just as effectively as the employee who is enjoined. Whether the deterrent under the contract is liquidated damages or injunction, the public policy of the statute is defeated.
The majority opinion takes the position that the statute should not apply in this case since the employee is a psychologist with a substantial income and is able to pay a penalty of $6,000. In my view, this is an attempt to return to the situation which existed in this state before the adoption of Act 133 of 1934, the source statute of LSA-R.S. 23:921. Before the adoption of the statute in 1934, our courts did consider such factors as the amount of consideration paid by the employer and the lack of mutuality. Shreveport Laundries v. Teague, La.App., 139 So. 563 (2d Cir. 1932); Cloverland Dairy Products Company v. Grace, 180 La. 694, 157 So. 393 (1934); and Blanchard v. Haber, 166 La. 1014, 118 So. 117 (1928). However, after the 1934 statute, these factors need not be considered. The statute proscribes such contracts as being against public policy and they are void regardless of the amount of consideration. If we apply the majority's reasoning to other contracts which are against public policy, we would find that gambling contracts, or agreements to commit a crime, are valid if the debtor is able to pay.
The majority opinion cites several cases for the proposition that contracts providing for liquidated damages, instead of an absolute prohibition against competitive employment, are not in violation of LSA-R.S. 23:921: Aetna Finance Company v. Adams, La.App., 170 So.2d 740 (1st Cir. 1964); Beneficial Finance Company of Monroe v. Aldrich, La.App., 200 So.2d 681 (2d Cir. 1967); and World-wide Health Studios, Inc. v. Desmond, La.App., 222 So.2d 517 (2d Cir. 1969). These cases are easily distinguishable. In each the employer had incurred expense in training the employee or *870 advertising. Hence, they fell within the exception which was added to the statute by amendment in 1962. The statute simply did not apply and the provisions for liquidated damages were enforceable the same as in any other contract. The cases have no bearing on the present matter.
For the reasons assigned, I dissent from the denial of an application for rehearing.
NOTES
[1] The 5 year term of the noncompetitive agreement applied even if the employment was terminated by the employer.