348 So.2d 205 (1977)
Anna K. TRAHAN, Individually and as Administratrix of the Succession of Harry Trahan, et al., Plaintiffs-Appellants,
v.
LIBERTY MUTUAL INSURANCE COMPANY et al., Defendants-Appellees.
No. 6054.
Court of Appeal of Louisiana, Third Circuit.
June 30, 1977.
Rehearing Denied August 1, 1977.
Writ Refused October 14, 1977.
*206 Jerry G. Jones, Jones, Jones & Alexander, Cameron, for plaintiffs-appellants.
Onebane, Donohoe, Bernard, Gorian, Diaz, McNamara & Abell by John G. Torian, II, and Robert W. Daigle, Lafayette, Plauche, Smith, Hebert & Nieset, by A. Lane Plauche, Lake Charles, for defendants-appellees.
Before DOMENGEAUX, GUIDRY and ROGERS, JJ.
DOMENGEAUX, Judge.
Harry Trahan, an employee of Evangeline Refinery Company, Inc. (Evangeline) was injured in an explosion which occurred on Evangeline's premises on May 12, 1974. He expired a few days later as a consequence thereof.
The plaintiffs-appellants are Mr. Trahan's widow and major children and they filed this suit in tort for the wrongful death of Mr. Trahan against: Evangeline Refinery Company, Inc. and its liability insurer, Reliance Insurance Company; Douglas-Guardian Warehouse Corporation, alleged to be the "lessee-sub-lessee" of Evangeline's premises upon which the decedent was working at the time of the explosion, and its liability insurer, Liberty Mutual Insurance Company; and XYZ Insurance Company, alleged to be the excess insurer for the executive officers and employees of Evangeline.
Evangeline moved for summary judgment alleging that there was no genuine issue of material fact between plaintiffs and it because at the time of the accident the decedent was working in the scope and course of his employment with Evangeline, and consequently any remedies which his widow and children had was exclusively under the provisions of the Louisiana Workmen's Compensation Act.
Subsequently the widow and minor children of the decedent entered into a compromise settlement with Evangeline and Reliance which resulted in the dismissal of this tort suit, with prejudice, against Evangeline and Reliance. The compromise agreement and the resulting dismissal reserved however to plaintiffs all rights which they may have against Douglas-Guardian and Liberty, and also reserving all rights against Evangeline and Reliance under the Louisiana Workmen's Compensation Act.
Douglas-Guardian and Liberty then filed a motion for summary judgment based on the pleadings, answers to interrogatories, affidavits, and deposition in the record. The trial court granted summary judgment and ordered the dismissal of plaintiff's suit against Douglas-Guardian and Liberty.
Plaintiffs have appealed the latter judgment. A review of these summary judgment documents discloses the following:
Evangeline Refining Company, Inc. is engaged in the refining of oil and various products as well as the retail distribution of gasoline. Its operation is located in Acadia Parish, Louisiana. Its premises are divided by a highway. South of the highway is located Evangeline's tank farm. The multiple tanks at that site are used primarily for the storage of such items as crude oil, condensate, diesel fuel and jet fuel. In early 1974, in order to meet certain government specifications, Evangeline installed a filtration system on the tank farm premises. It was installed to refine J.P.-4 jet fuel. The filtration system process consisted primarily of the pumping of jet fuel from the bottom *207 of a large tank through a filtering unit and then into the top of the same tank. A diesel tractor with a roper pump is the device used to circulate the jet fuel. The pump operates on the engine power supplied by the engine from the tractor. The entire filtration system was installed, maintained, and operated by Evangeline.
The decedent, Harry Trahan, was employed by Evangeline as a truck driver. Shortly after midnight on or about May 12, 1974, Trahan, while operating a pickup truck ran into the mechanisms at or near the filtration system pump situated on the trailer-tractor, while the filtration system was in operation. An explosion ensued, resulting in flames which engulfed Trahan and caused his ultimate demise.
One of the decedent's duties was that of a "standby hand" to oversee the filtration operation on the night in question.
On March 16, 1965, Evangeline, in order to qualify for the purchase of crude oil from the U. S. Government, entered into two agreements with Douglas Guardian Warehouse Corporation, the purpose of which was to afford Evangeline a bonded warehouseman in the event their services were needed in issuing warehouse receipts. The first agreement, which specifically encompasses the aforementioned Evangeline tank farm, was a lease agreement pursuant to which Evangeline leased to Douglas-Guardian the specified tanks and "all pipelines, valves, compressors, motors, pumps and any and all other appurtenances to said tanks required for the filling, emptying, or maintenance thereof." In addition, the parties entered into a warehousing agreement in connection with the so-called lease. The lease agreement specifically provided that Evangeline (lessor) was responsible for the repair and good order of the premises at its own cost and that Douglas-Guardian was not to be called on to make any repairs to the premises nor under any circumstances to be liable for any loss or damage to any goods stored in the premises.
Whenever the need arose for the issuance of bonded warehouse receipts, Kent Mitchell, an employee of Evangline, would prepare the necessary documents and certification. Presumably to protect the integrity of the warehousing agreement, Mr. Mitchell's salary was paid by Douglas-Guardian; however, Douglas-Guardian was reimbursed by Evangeline for all salary and benefits paid to Mitchell.[1]
Douglas-Guardian had not furnished any warehousing services or issued any warehousing receipts on the premises of Evangeline since December of 1968, nor did it have an interest or participation in the activities being conducted at the time of Mr. Trahan's death. Douglas-Guardian did not own, was not leasing, and exercised no custody or control over the filtration system. The aforementioned lease agreement did not apply in any respect to the filtration system. Douglas-Guardian did not operate or have any part in the operations being conducted on the tank farm hereinabove referred to preceding or at the time of the death of Harry Trahan. Furthermore; Douglas-Guardian did not participate in, supervise, or control or have any financial interest in any manner in the operations being conducted by Evangeline on May 12, 1974, at the time of the death of Harry Trahan. Specifically, Kent Mitchell had no duties in connection with the tank farm at which Harry Trahan met his death, at the time of the demise or at any time immediately prior thereto, nor did he have any connection with the operations being performed at the time of Trahan's death. Kent Mitchell's regular employment was with Evangeline's refining operations which are not located adjacent to or contiguous to or in any manner directly related to the tank farm. Finally, neither Douglas-Guardian nor any of its employees have entered upon Evangeline's tank farm premises subsequent to the installation of the filtration system which was more than a month prior to the aforementioned accident date.

*208 OPINION
Appellants suggest that the responsibility of Douglas-Guardian for the death of Harry Trahan is based:
1. On negligence under Articles 2315 and 2316 of the Louisiana Civil Code; and
2. Strict liability under Article 2317 of the Louisiana Civil Code.
Motions for summary judgment are governed by Articles 966 and 967 of our Code of Civil Procedure. Under Article 966 the summary judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. Under Article 967, when a motion for summary judgment is made and supported by the pleadings, depositions, etc., an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in the Articles, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be rendered against him.
In this summary judgment matter, the facts recited herein were established by the pleadings, affidavits, and depositions filed on behalf of Douglas-Guardian.
These facts have not been contradicted. Plaintiffs have filed nothing tending to show that there is a genuine issue for trial. In the absence of any counter affidavits it must be assumed that there is no dispute with regard to the facts set forth in the mover's affidavits. Johnson v. Combined Insurance Company of America, 158 So.2d 63 (La.App. 1st Cir. 1963); Joiner v. Lenee, 213 So.2d 136 (La.App. 3rd Cir. 1968), writs refused, 252 La. 960, 215 So.2d 129 (1968).
It appears that appellant contends that Douglas-Guardian's liability based on its negligence arose from its status as lessee. Liability based on negligence must be tested under Articles 2315 and 2316 of the Louisiana Civil Code. To establish a prima facie case of negligence plaintiff must prove the existence of a duty on the part of defendant and a breach of that duty. Pierre v. Allstate Insurance Company, 257 La. 471, 242 So.2d 821 (1970); Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972).
Statutes are guidelines to which a court may resort to establish the proper standard of care for assigning civil liability. Weiland v. King, 281 So.2d 688 (La.1973).
The Louisiana Civil Code Articles defining the respective rights and obligations of lessors and lessees, although not conclusive in regard to the duties of said parties to third persons, nevertheless are relevant to a determination of what those duties are.
Articles 2710, et seq. of the Louisiana Civil Code set out the obligations and rights of lessees and a review of these articles indicate that the only possible codal obligation of a lessee which would be relevant to the instant case is that of making repairs. The obligation comes under C.C. Article 2716. However, it is rather limited as indicated therein. It is difficult to perceive from the Civil Code Articles that Douglas-Guardian had a duty to the decedent that was breached.
Appellant suggests that Douglas-Guardian's responsibility is based upon its negligence in the maintenance of the leased premises. In effect, it is urging that Douglas-Guardian breached its duty to maintain the premises. However, it is elementary that before one can be said to have breached the duty there must in fact be a duty owed by said party. The duty to maintain and keep the premises in good repair is a duty imposed on the lessor by the Civil Code. See Article 2693-2699. Furthermore, tort responsibility for losses resulting from vices and defects in the property leased is imposed on the lessor, not the lessee. See Article 2695.
Additionally, the obligations of Evangeline, as lessor, and Douglas-Guardian as lessee are further defined by the aforementioned lease agreement which, as indicated hereinabove, specifically provides that *209 Evangeline, the lessor, was to be responsible for the repair and good order of the premises at its own cost and that Douglas-Guardian was not to be called on to make any repairs to the premises nor under any circumstances to be liable for any loss or damage to any goods stored in the premises.
Appellants suggest that the obligations and duties that exist between lessor and lessee, i.e. Evangeline and Douglas-Guardian, cannot be used to avoid liability to plaintiffs. This is not completely correct. In Weiland v. King, supra, our Supreme Court found that the obligations of a lessor under the lease in that case were very relevant in determining the duty owed by the parties to the lease to third persons. The court's conclusion that defendant-lessor was responsible for the losses suffered by a third party was buttressed by the provisions of the lease which were cited in the court's opinion.
Douglas-Guardian had no duty to maintain the premises. Additionally, a review of the summary judgment materials filed on behalf of Douglas-Guardian conclusively shows that Douglas-Guardian was not guilty of any fault that contributed to the accident herein. These materials indicate that no services were performed by Douglas-Guardian on the premises since December of 1968; that no employee of Douglas-Guardian took part in the installation or construction of the filtration system, that no employee of Douglas-Guardian performed any duties whatsoever on the tank farm premises subsequent to the installation of the filtration system; Douglas-Guardian had no duty to maintain the premises and had no responsibility for any defects found in the premises and absolute and total control of the tank farm premises was exercised solely and completely by Evangeline.
The relation of Douglas-Guardian to the accident is tenuous, and arises only from a "convenience" lease which allowed Evangeline, the lessor, accessibility to a bonded warehouse. As indicated above, Douglas-Guardian had no control over the operation causing the injury, and thus no duty was breached which would impose liability on it.
Concerning strict liability, appellant suggests that under Article 2317 of the Louisiana Civil Code, as interpreted by our Supreme Court in the case of Loescher v. Parr, 324 So.2d 441 (La.1975) that strict liability is applicable to the facts of this case as set out in the summary judgment. Under Loescher, one of the requirements necessary before strict liability under C.C. Article 2317 can be imposed is "that the thing that causes the damage was in the care or custody of the defendant". Liability under C.C. Article 2317 does not depend upon ownership of the thing but rather depends upon custody at the time of the damage. Here, in the lease agreement between Evangeline and Douglas-Guardian it specifically provided that Evangeline was obligated to maintain the leased premises. Furthermore, the summary judgment materials conclusively show that Douglas-Guardian had no connection whatsoever with the leased premises at the time of the decedent's death. And additionally the affidavits herein unequivocally show that Douglas-Guardian exercised no custody or control over the allegedly defective thing.
In view of the foregoing we affirm the judgment of the district court which granted summary judgment in favor of Douglas-Guardian and Liberty ordering plaintiffs' suit dismissed as to them. All costs at trial and on appeal are assessed against plaintiffs-appellants.
AFFIRMED.
NOTES
[1] No issue is made herein of the propriety of the agreement to reimburse.