396 So.2d 999 (1981)
Mary WILLIAMS et al., Plaintiff-Appellant,
v.
Herbert F. HEMPEN et al., Defendant-Appellee.
No. 8003.
Court of Appeal of Louisiana, Third Circuit.
March 11, 1981.
Rehearing Denied April 27, 1981.
Christopher J. Roy, Alexandria, for plaintiff-appellant.
Stafford, Stewart & Potter, Grove Stafford, Jr., Alexandria, for defendants-appellees.
Before GUIDRY, CUTRER and LABORDE, JJ.
LABORDE, Judge.
This is a tort suit. Mary Williams sues on behalf of her minor son, Christopher, seeking damages for injuries he sustained when a large trash dumpster fell on him, fracturing his left leg. The dumpster was owned by the City of Alexandria and leased to Hempen Motor Company. Named as *1000 defendants were Herbert F. Hempen d/b/a Hempen Motor Company; his insurer, North River Insurance Company; The City of Alexandria; and its insurer, Maryland Casualty Company. Prior to trial, plaintiff settled with the City and its insurer who were then released.
Following trial on the merits, the trial judge ordered plaintiff's claims against Hempen and North River dismissed.
The issues presented are whether plaintiff is entitled to recover damages from defendants either under Article 2317 or under Articles 2315 and 2316 of the Louisiana Civil Code.
Upon our review of the record, we are convinced that plaintiff is entitled to recovery under Civil Code Article 2317. We reverse the trial court and render judgment in favor of plaintiff.

FACTS
On the evening of August 23, 1976, 9 year old Christopher Williams was standing near a curb watching several friends who were playing football near the premises of Hempen Motor Company in Alexandria, Louisiana. A large trash dumpster was located alongside Hempen's building near the curb where Christopher was standing. The dumpster, for some reason, overturned and fell on Christopher, fracturing his left leg.

STRICT LIABILITY UNDER ARTICLE 2317
The first issue is whether plaintiff may recover damages from defendants under Article 2317 which in part provides: "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the ... things which we have in our custody...." Our Supreme Court interpreted this article in the leading case of Loescher v. Parr, 324 So.2d 441 (La.1975). The Court held that in order to establish liability under Article 2317, the plaintiff must prove: (1) the thing was in defendant's custody; (2) the thing had a vice or defect; and (3) the injury or damage occurred through the vice or defect. Upon proof of these elements, the "custodian" is held liable unless he proves that the damage was caused by victim fault, third party fault, or an irresistible force. Loescher v. Parr, supra.
At the trial level, the judge denied recovery to plaintiff under Article 2317, holding that plaintiff failed to prove Hempen's custody or control of the dumpster or that it was defective.
Was the Dumpster in Hempen's Custody or Control?
On appeal, defendants contend that the dumpster was owned by and leased from the City who was responsible for the upkeep of the dumpster. Under these circumstances, they urge that the City was the sole custodian of the dumpster and that the trial judge was correct in concluding that plaintiff failed to prove Hempen's custody or control of the dumpster.
Plaintiff counters by arguing that the record unquestionably established that Hempen was the custodian or possessor of the dumpster.
The Supreme Court explained rather extensively its interpretation of the term "custody" in Loescher v. Parr, 324 So.2d at 449, footnote 7:
"... `[T]he things in one's care are those to which one bears such a relationship as to have the right of direction and control over them, and to draw some kind of benefit from them. This relationship will ordinarily be associated with ownership, but the guardianship will also belong to the bailee, the lessee, the usufructuary, the borrower for use and the repairman, among others.... The owner may transfer the guardianship by transferring the thing to another who will bear such a relationship to the thing as to himself have the care of it...." Verlander, We Are Responsible ..., 2 Tulane Civil Law Forum, No. 2, p. 64 (1974).
Likewise, in Trahan v. Liberty Mutual Insurance Company, 348 So.2d 205 (La.App. 3rd Cir. 1977), writ refused, 351 So.2d 163 (La.1977), our court in discussing the custody elements set forth in the Loescher case *1001 stated: "Liability under C.C. Article 2317 does not depend upon ownership of the thing but rather depends upon custody at the time of the damage." (Emphasis supplied.)
With these principles in mind, we return to the facts in the instant case. The record established that the dumpster was owned by the City, but that pursuant to an oral lease, the dumpster had been delivered to Hempen Motor Company for its exclusive use in the disposal of its trash. Hempen had used the dumpster for approximately four or five years prior to Christopher's accident. During those four or five years, owner Frank Hempen, Sr. freely admitted that the dumpster was in their possession and that it was utilized exclusively by Hempen employees. Several Hempen employees, along with General Manager, Frank Hempen, Jr., testified that they deposited trash in the dumpster daily, and that whenever convenient for those who picked up trash, they would roll the dumpster to the trash collection site.
Other evidence of Hempen's control supplied by the record indicates that it was Frank Hempen, Jr., or Hempen's janitor, James Ferrell who chocked the wheels of the dumpster as a safety precaution after discovering its propensity to roll; that Frank Hempen, Jr. once straightened the dumpster's bent sides; that Frank Hempen, Sr. inspected the dumpster daily; and that after the accident, Frank Hempen, Jr. decided to move the dumpster inside the Hempen building.
In contrast, the City, though it owned the dumpster, exercised little or no direction or control over it. For example, after the dumpster was delivered to Hempen, the only time the City exercised control over it was when it emptied the dumpster. This occurred bi-weekly and lasted only a few minutes. In addition, the record shows that during the four to five years that Hempen possessed the dumpster prior to the accident, the City never repaired, serviced or maintained it.
Under the reality as it existed at the time Christopher was injured, it was Hempen, as lessee and possessor, who exercised direction and control over the dumpster and who derived benefit from it. We conclude that Hempen was the custodian of the dumpster.
Did the Dumpster Have a Vice or Defect?
Defendants, in brief, concede that Christopher was standing next to the large trash container, "when for no apparent reason, the container fell on him, injuring his left leg." (Defendant's Brief p. 1). Yet, they contend that the dumpster, "being properly used and loaded with the lid closed, standing motionless on level ground is not defective."
Plaintiff, on the other hand, contends that the dumpster overturned because it was defective.
The trial judge held that plaintiff failed to prove that the dumpster was defective, adding that no conclusive evidence tending to prove any defect in the dumpster was introduced.
We again refer to the Loescher case where the Supreme Court held that an owner or a custodian of a defective thing is strictly liable for the damage caused by its defect. The Court defined the concept of "defect" broadly to include any unreasonable risk of harm to others.
In Marquez v. City Stores Co., 371 So.2d 810 (La.1979), the Supreme Court added a bit of gloss to its earlier definition of "defect". In the Marquez case, plaintiff established that a child was injured when his tennis shoe got caught in an escalator, resulting in subsequent amputation of his toe. The Court was asked to decide whether plaintiff had proved a defect in the escalator. The Court reviewed the record and noted that several thousand people had used the escalator since it was installed in 1972 without a foot becoming wedged in it. Nonetheless, the Court held that plaintiff proved a defect reasoning, "The fact that this escalator caught this child's shoe is an unusual occurrence in itself which would not have happened had this escalator not been defective." Thus, in effect, plaintiff was aided in proving that the escalator was *1002 defective by showing an unusual occurrence.
We return to the instant case to determine whether plaintiff proved a defect in the dumpster. The record establishes that the dumpster was constructed of sheet metal. Its dimensions were four feet high by four and a half feet wide by approximately three feet deep. The dumpster had four wheels and when empty, weighed 580 pounds. Further, Phillip Bordelon, Superintendent of Sanitation for the City, testified that the dumpster is designed such that it can be tilted easily into the sanitation trucks.
The dumpster was located on a sidewalk near the rear entrance of Hempen's premises. The sidewalk was at a slight slope or incline down to the curb and street. There was abundant testimony establishing that it was common knowledge that the dumpster rolled and that a brick was positioned behind one of the wheels to keep the dumpster in place. Frank Hempen, Sr. testified that the brick was put there as a safety precaution to keep the dumpster from rolling or moving down the inclined sidewalk. (Tr. 67.) Frank Hempen, Jr. agreed that the brick was purposely used to keep the dumpster from rolling. (Tr. 134.)
There was also testimony elicited from Hempen employees that the dumpster was occasionally found "tumped" over when they arrived for work in the morning. Leonard Cooley, a former mechanic at Hempen, testified that he found the dumpster turned over in the street on two occasions. Cooley's testimony was corroborated by testimony from James Ferrell, the Hempen janitor, who likewise testified that on two mornings, upon finding the dumpster overturned, he and other employees righted it and replaced the trash that had fallen out.
Upon our review of the record, and in light of the principles enunciated above, we conclude that the fact that this dumpster overturned for no apparent reason is an occurrence which would not have happened had it not been defective. Marquez v. City Stores Co., supra; Vicknair v. T. L. James Company, Inc., 375 So.2d 960 (La.App., 4th Cir. 1979), writ denied, 379 So.2d 10 (1980). We hold that plaintiff proved the dumpster was defective.
Did the Injury Occur Through the Defect of the Dumpster?
Upon our review of the record, we have no difficulty concluding that Christopher's injury occurred through the dumpster's defect.

DEFENSES
The only way Hempen and its insurer can escape liability is to show that the damage was caused by Christopher's fault, by third person fault, or by an irresistible force. Loescher v. Parr, supra.
Christopher testified that he remembers standing near the dumpster next to his friend, Jodie McCree, and that the dumpster fell on him. He did not know what caused it to fall but he denied grabbing or pulling the dumpster.
Jodie McCree testified that he was watching the ongoing football game when the dumpster fell on Christopher but that prior to that neither Christopher nor anyone or anything else touched or disturbed the dumpster. Defendants failed to prove fault of the victim.
Defendants managed to prove that the City owned the dumpster. There was also testimony that an oral lease existed between the City and Hempen and that pursuant to this lease, the City was responsible for the upkeep of the dumpster. We find this evidence insufficient to prove fault of a third party.
Defendants introduced no evidence tending to establish that the dumpster overturned due to an irresistible force.
We conclude that defendants have failed to carry their burden of proof, and therefore they are liable for the damages to Christopher.

DAMAGES
Because we reverse the trial court judgment, we must now determine the *1003 amount of damages due Christopher. Our authority do to so comes from LSA-C.C.P. art. 2164 which provides that appellate courts may "render any judgment which is just, legal, and proper upon the record on appeal." In addition, the Supreme Court in Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975), ruled that Courts of Appeal should decide the entire case when the record is complete.
As a result of the incident, Christopher received an open fracture of his left leg. He was hospitalized for about ten days and underwent two surgical procedures for debridement of his injuries.
Thereafter he wore a long-leg cast for two months, followed by a couple of months in a short-leg cast.
Dr. John Weiss, an orthopedic surgeon, examined Christopher about fourteen months after the incident. Dr. Weiss was qualified as an expert at the trial and we quote from his testimony. Pursuant to his examination, Dr. Weiss found:
"His leg lengths were equal. The alignment of the left leg appeared quite normal. There was a little indentation about the junction of the middle and distal thirds of the leg over the anteromedial surface. In other words, this was a little scarring. There was .... I have on here: "no tenderness of same." I think I mean minimal tenderness of same. Had full range of motion of his ankle .... the left compared to the right. I did X-ray him. Two views of his left tibia revealed an old healed fracture with excellent alignment of the tibia and fibula, there's junction in the middle and distal thirds. I felt he had an old fracture at the junction of the middle and distal thirds of the left tibia and fibula and that no treatment was indicated." (Tr. 98)
Dr. Weiss further testified:
"It is an excellent alignment and excellent healing and appears quite strong. In fact, if he had excessive stress on this site, I suspect, if he developed any fracture in the future at some time, it would not be at that level but above or below it." (Tr. 99)
When asked whether Christopher would have any impairment in the future, Dr. Weiss answered that he would have some sensitivity over the scar but that he did not think he will have any physical impairment, loss of physical function or long-term problems. (Tr. 112)
Based on the evidence, we award plaintiff $12,000 for Christopher's injuries and $1,012.05 for special damages. This award is reduced by one-half in accordance with the joint stipulation entered between the parties.[1]

CONCLUSION
Plaintiff has proved that the dumpster which caused the damages was in the custody of Hempen Motor Company, that the dumpster was defective and that Christopher's damages occurred through this defect. Defendants failed to prove that the damage was caused by victim fault, by third party fault, or by an irresistible force. Therefore, defendants are liable. LSA-C.C. art. 2317. Our finding of strict liability under Article 2317 pretermits the need for discussion of liability under a negligence theory.
For these reasons, the judgment of the trial court ordering plaintiff's suit dismissed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment in favor of plaintiff, Mary Williams and against defendants, Herbert F. Hempen and North River Insurance Company, in the amount of $6,506.02 with legal interest from date of judicial demand until paid.
*1004 Defendants are cast for all costs, both at trial level and on appeal.
REVERSED AND RENDERED.
NOTES
[1] By agreement the attorney for defendants Herbert F. Hempen and North River Insurance Company and the attorney for plaintiff Mary Williams jointly stipulated that "the City of Alexandria was at fault in causing the injuries and damage of Christopher Williams and Mary Williams as described in the petition ..." Accordingly, they agreed "that any judgment which may be rendered herein against Herbert F. Hempen and/or North River Insurance Company will be reduced by one-half."