407 So.2d 1317 (1981)
Leopold GOUDCHAUX, Plaintiff-Appellant,
v.
STATE FARM FIRE & CASUALTY COMPANY, Defendant-Appellee.
No. 8542.
Court of Appeal of Louisiana, Third Circuit.
December 16, 1981.
Rehearing Denied January 29, 1982.
*1318 Fuhrer & Flournoy, Philip G. Hunter, Alexandria, for plaintiff-appellant.
Gist, Methvin, Hughes & Munsterman, DeWitt T. Methvin, Jr., Alexandria, for defendant-appellee.
Before FORET, SWIFT and LABORDE, JJ.
*1319 FORET, Judge.
Leopold Goudchaud (Plaintiff) brought this tort action to recover damages for personal injuries he suffered while using a sewer auger[1] at the residence of William J. Wood (Wood). State Farm Fire & Casualty Company (State Farm), Wood's homeowners liability insurer, was named defendant.
The trial court rendered judgment in favor of State Farm rejecting plaintiff's demand. Plaintiff appeals from that judgment and raises the following issues:
(1) Whether the trial court committed manifest error in finding (a) that the sewer auger was not in the custody of Wood at the time the accident occurred and/or (b) that there was no defect or vice in that machine;
(2) Whether the trial court erred in failing to find Wood guilty of actionable negligence for which State Farm should be held liable to plaintiff.

FACTS
The accident giving rise to this action occurred on January 26, 1980, in Alexandria, Louisiana. Wood rented the sewer auger from the Rent-It Company (Rent-It) in Alexandria and brought it to his residence to clear the sewer lines serving his home. He had been using the machine for a couple of hours when plaintiff came over to borrow a tach-dwell meter for use in servicing plaintiff's automobile. Wood lent him the meter and plaintiff proceeded to work on his automobile in Wood's driveway. Meanwhile, Wood resumed the task of cleaning his sewer lines. Approximately fifteen to twenty minutes later, Wood called out to plaintiff to come over and help him. Wood had removed a glove he was wearing and told appellant that he had injured his hand using the machine. They examined Wood's hand to see if any bones had been fractured.
Wood then asked plaintiff to help him finish cleaning the sewer line as it was getting late. Plaintiff agreed and had been operating the machine for between three to five minutes when the accident occurred. Apparently, the cutting head of the machine struck some solid object causing the steel cable to twist violently. In doing so, it severed the distal phalanx of plaintiff's left ring finger. A search of the sewer line failed to produce that portion of plaintiff's finger. Plaintiff was brought to the emergency room of a local hospital where the wound was treated.
Plaintiff instituted this action alleging that Wood was strictly liable for the injuries suffered by him. In the alternative, plaintiff alleged that Wood had been negligent in several respects and that this negligence resulted in his injury. State Farm has agreed to pay all of plaintiff's medical expenses resulting from the accident. Thus, all plaintiff seeks is an award for general damages.
The action was tried by the trial court which returned a judgment in favor of State Farm and against plaintiff, who was granted a devolutive appeal from the trial court's judgment.

STRICT LIABILITY
Plaintiff contends that Wood should be held strictly liable to him for the injuries he suffered under the provisions of LSA-C.C. Article 2317 and/or LSA-C.C. Article 2322.
LSA-C.C. Article 2317 provides, in pertinent part:

*1320 "Art. 2317. Acts of others and of things in custody
Art. 2317. We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. ...."
For recovery under LSA-C.C. Article 2317, a plaintiff must show: (1) that the thing which caused the injury was in the care or custody of the defendant/owner; (2) that a vice or defect existed in the thing; and, (3) that the vice or defect caused the injury. A vice or defect is defined as one which creates an unreasonable risk of injury to another. Loescher v. Parr, 324 So.2d 441 (La.1975); Reinhard v. City of New Orleans, 371 So.2d 286 (La. App. 4 Cir. 1979).
We note at the outset that plaintiff has cited to this Court a line of jurisprudence characterized by the decision in Weber v. Fidelity & Casualty Insurance Company of New York, 259 La. 599, 250 So.2d 754 (1971), in support of his contentions. These cases are inapposite to the issues before us as they concern the liability of a manufacturer of a defective product. Here, plaintiff has brought no action against the manufacturer of the sewer auger.
The first inquiry in making a determination of strict liability for damages caused by a defect in a thing is whether the thing was in the care or custody of the defendant at the time the accident occurred. Loescher contains the following quote concerning this issue of the care or custody of a thing on 324 So.2d 449, Footnote 7:
"7. In Verlander, We are Responsible..., 2 Tulane Civil Law Forum, No. 2, p. 64 (1974), which contains a perceptive and thorough analysis of the French, Quebecois, and Louisiana interpretations, it is suggested: "[T]he things in one's care are those things to which one bears such a relationship as to have the right of direction and control over them, and to draw some kind of benefit from them. This relationship will ordinarily be associated with ownership, but the guardianship will also belong to the bailee, the lessee, the usufructuary, the borrower for use and the repairmen, among others. It will not belong to the agent or the mandatory, the employee or the servant, or to anyone else for whom there is a responsible principal. The owner may transfer the guardianship by transferring the thing to another who will bear such a relationship to the thing as to himself have the care of it. He may also lose the care of this thing, principally by the theft of the thing." (Emphasis ours)
Plaintiff contends that the sewer auger was in the care or custody of Wood at the time that the accident occurred. The trial court found that it wasn't, and we agree.[2] Liability under LSA-C.C. Article 2317 arises from the legal relationship of the person sought to be held liable to the thing which creates an unreasonable risk of injuries to others because it is defective. The fault of the person thus liable is based upon his failure to prevent the thing for which he is responsible from presenting such unreasonable risk of injury to others. Loescher v. Parr, supra; Shipp v. City of Alexandria, 395 So.2d 727 (La.1981); Jones v. City of Baton Rouge-Parish of East Baton Rouge, 388 So.2d 737 (La.1980); Morgan v. Hartford Accident & Indemnity Company, 402 So.2d 640 (La.1981).
The evidence shows that Wood had rented the sewer auger a couple of hours before the accident occurred. Wood, himself, *1321 used the machine during that period of time. This rental and use for a short period of time are the only existing elements of Wood's relationship to the machine. It is Rent-It, rather than Wood, which has the responsibility of maintaining the things it offers to rent on a short term basis to the general public. Rent-It is the entity that has direction and control over those things and it derives benefits from them. We find that Wood's relationship to the sewer auger is insufficient to result in the imposition of strict liability on him for injuries caused by any defect which may exist in that machine. Our finding is supported by the following quotes from Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Arceneaux arose from a collision between a plaintiff's automobile and an automobile owned by one Jimmy Bearb and being driven by one Drew Domingue. It was alleged that Domingue had been unable to stop the car because of a defect in its braking system. Arceneaux discussed the liability for defects in a thing under LSA-C.C. Article 2317 and Loescher v. Parr, supra, and stated on page 1335:
"In a genuine case of brake failure, the owner, charged with the responsibility of maintenance, should not escape liability merely because another person was driving the car."
Justice Dennis, concurring in Arceneaux, wrote on page 1337:
"Accordingly, an individual is liable for his legal fault in maintaining a defective vehicle which creates an unreasonable risk of harm to others, such as an automobile with defective brakes, which causes injury unless he proves that the damage was caused by the fault of the victim, by the fault of a third person, or by an irresistible force. Consequently, an individual who lends his properly maintained automobile to a friend who negligently injures another is not liable either because the injury was caused by a "third person" or because it did not result from a vice or defect in the vehicle. However, if the cause of the injury was due to a defect or vice in the automobile, the owner, who has custody or care of the vehicle even while it is in his friend's possession, is liable unless he proves that the damage was caused by the victim's fault, by a third person's fault, or by an irresistible force." (Emphasis ours.)
Cardwell v. Jefferson Rentals Division of J-R Equipment Corporation Assurance Company, 379 So.3d 255 (La.App. 4 Cir. 1979), writ application withdrawn, 382 So.2d 164 (La.1980), dealt with a situation consisting of facts and circumstances similar to those in the action before us. In Cardwell, defendant had rented a chain hoist to another firm, Hollywood Door Sales (Hollywood), for use by its employees in hanging doors. One of Hollywood's employees picked up the chain hoist from defendant one afternoon for use the next morning. The chain hoist broke almost immediately after being put to use, causing injury to two of Hollywood's employees. Cardwell found that the relationship between the lessee (Hollywood) and the thing (chain hoist) was insufficient to support a finding that the care or custody of the thing had been transferred from the lessor (Jefferson Rentals) to the lessee. We reach the same result here.[3]

APPLICABILITY OF LSA-C.C. ARTICLE 2322
Appellant also relies on LSA-C.C. Article 2322 in contending that Wood is *1322 strictly liable for the injuries suffered by him. LSA-C.C. Article 2322 provides:
"Art. 2322. Damage caused by ruin of building
Art. 2322. The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice in its original construction."
Wood testified that the sewer lines would sometimes become blocked after a hard rain. This was caused by the public sewer system which was unable to handle the increased run-off of water resulting from the construction of many homes in the area. Debris would be pushed back into the sewer lines by the rising water and would remain there once the water level fell. Thus, the blockage of the sewer lines running to Wood's home resulted from inadequacies in the public sewer system rather than any ruin of his "building" caused by a neglect to repair it or a vice in its original construction. We find that LSA-C.C. Article 2322 is inapplicable to the facts before us.
There being no basis for liability on the part of Wood under either LSA-C.C. Article 2317 or LSA-C.C. Article 2322, we find that Wood is not strictly liable to appellant.

WOOD'S ALLEGED NEGLIGENCE
In the alternative, appellant contends that Wood was negligent in failing to fully instruct him on the use of the machine and in failing to warn him of the dangers connected with such use. Appellant bases his contention on the broad provisions of LSA-C.C. Articles 2315 and 2316.
The first inquiry in making a determination of liability under these articles is whether any causal relationship exists between the harm suffered by appellant and Wood's alleged negligent conduct. Thus, if appellant can show that he probably would not have suffered the injuries complained of but for Wood's conduct, he has carried his burden of proof relative to cause-in-fact. Shelton v. Aetna Casualty and Surety Company, 334 So.2d 406 (La.1976); Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Vidrine v. Missouri Farm Association, 339 So.2d 877 (La.App. 3 Cir. 1976), writ denied, 342 So.2d 216 (La.1977); Stewart v. Gibson Products Company of Natchitoches Parish Louisiana, Inc., 300 So.2d 870 (La.App. 3 Cir. 1974).
Plaintiff admitted that he knew that Wood's hand had been injured by the sewer auger after Wood had called out to him for help and he had examined Wood's hand. He also knew that it was the cable on the sewer auger that had caused the injury. Wood testified that he did tell plaintiff that the machine had struck something causing the cable to wrap around his hand. We fail to see how Wood could have given better warning to appellant than by showing appellant his own injury and telling him what had happened. We find that Wood did warn appellant of the dangers of using the machine. There being no failure to warn, it could not be a cause-in-fact of the accident.
Plaintiff also contends that Wood failed to relate to him the full instructions given by the employees of Rent-It to Wood respecting the operation of the sewer auger. Wood testified as to the instructions given him by Rent-It. These included an admonition that Wood wear gloves while using the machine and that there be no more than a certain distance between that portion of the machine through which the cable is fed and the hole into which it is being placed. Wood stated that one of Rent-It's employees had held up his hands to show him roughly what that distance should be. He estimated it to be 5 to 5½ inches. That same employee had indicated that the cable could twist up if the distance was greater than that. However, Wood testified that he had no idea that a twist in the cable could cut someone's finger off. Wood testified that the machine was approximately 6 to 8 inches from the hole when the accident occurred.
Plaintiff testified that Wood did instruct him on the function and use of the foot *1323 pedal and that Wood showed him how to feed the cable into the hole. We find that Wood did show appellant how to operate the machine to the best of his knowledge, although he may not have specifically stated to appellant that the machine should be no more than a certain distance from the hole. We also find that Wood did tell plaintiff that he should wear gloves before the accident occurred, but after appellant began operating the machine. In any case, there was no evidence presented to show that the accident would not have occurred had appellant been wearing gloves. Thus, since Wood did instruct appellant as to the proper method of operating the machine to the best of his knowledge, there was no failure to do so which could be considered a cause-in-fact of the accident. Having failed to prove that Wood engaged in the conduct alleged, appellant is not entitled to recover damages from Wood or State Farm for his injuries.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against plaintiff-appellant.
AFFIRMED.
NOTES
[1] A sewer auger is a device used to remove debris from sewer pipes. The sewer auger with which we are concerned was powered by a small electric motor. That motor was used to rotate a circular metal frame containing a flexible steel cable. The rotation of the circular metal frame also causes the cable to rotate. The cutting head is attached to the end of the cable and the cable is then fed into the sewer line sought to be cleaned. By pushing the spinning cable into the hole, the rotating cutting head is forced against obstructions in the lines and cuts through them. The electric motor is controlled by means of a foot pedal. The device is similar to what is commonly known as a "Roto-Rooter" machine.
[2] We also agree with the trial court's finding that plaintiff failed to prove the existence of any defect in the sewer auger. The only evidence offered by plaintiff on this issue was that showing that he had been injured by the machine. As was noted in Shipp v. City of Alexandria, infra, the mere fact that one is injured by a thing does not elevate the condition of that thing to that of an unreasonably dangerous vice or defect. See also Broussard v. Pennsylvania Millers Mutual Ins. Co., 406 So.2d 574 (La. 1981).
[3] Williams v. Hempen, 396 So.2d 999 (La.App. 3 Cir. 1979), provides an example of a situation in which the relationship between a lessee and a defective thing was found to be sufficient enough to impose strict liability on the lessee for injuries caused by the thing. Williams was brought on behalf of a minor plaintiff who was injured when a large trash dumpster fell on him. The dumpster was owned by the City of Alexandria and leased to Hempen Motor Company. The evidence showed that under an oral lease the dumpster had been delivered to Hempen for its exclusive use in the disposal of its trash. Hempen had used the dumpster for that purpose for approximately four or five years prior to the date on which the plaintiff was injured. This Court found that it was Hempen, as lessee and possessor, who exercised direction and control over the dumpster and who derived benefit from it. Thus, Hempen was found to have had the care or custody of the dumpster at the time of the accident.