436 So.2d 698 (1983)
Brenda F. JACKSON, et ux., Plaintiffs-Appellants,
v.
FIREMAN'S FUND INSURANCE COMPANY, et al., Defendants-Appellees.
No. 83-146.
Court of Appeal of Louisiana, Third Circuit.
July 21, 1983.
Writ Denied October 28, 1983.
*699 Nathan A. Cormie, Lake Charles, for plaintiffs-appellants.
Raggio, Cappel, Chozen & Berniard, Fred L. Cappel, Lake Charles, for defendants-appellees.
Before DOMENGEAUX, CUTRER and STOKER, JJ.
CUTRER, Judge.
Brenda F. Jackson and her husband, Ernest Jackson, sued the Kroger Company (Kroger), and its insurer, Fireman's Fund Insurance Company (Fireman's Fund), for damages sustained when Mrs. Jackson was struck by cans which fell from a display in Kroger's Twelfth Street store in Lake Charles, Louisiana. A jury found that Kroger was neither negligent nor guilty of "defectively" stacking its merchandise. Pursuant to these findings the trial court dismissed the Jacksons' demands and rendered a verdict in favor of Kroger and its insurer, Fireman's Fund. The Jacksons appealed and we affirm.

FACTS
On the morning of Friday, April 16, 1982, Mrs. Jackson entered Kroger's "Family Center Store" on Twelfth Street in Lake Charles, Louisiana. This store is a large, self-service grocery store. Mrs. Jackson was very familiar with the store; according to her own testimony, she visited the store "almost every day." Upon entering the store, Mrs. Jackson secured a shopping cart and proceeded to the meat department. After making several selections in the meat department Mrs. Jackson made her way to a display of Kroger's own store brand "cost-cutter" canned goods.
The "cost-cutter" canned merchandise was stacked in a stairstep fashion with the highest step being higher than Mrs. Jackson's head (Mrs. Jackson is 5 feet 3 inches tall). The cans in the display were still in cardboard boxes but the front portion of the boxes had been cut away to allow customers to see the labels on the various products. Mrs. Jackson viewed the display for some time trying to decide which items to purchase. As she stood in front of the display several other customers selected products and moved on. She then proceeded with her shopping and, as she was doing so, several cans fell from the upper portion of the stairstep display, striking Mrs. Jackson causing facial and arm injuries.
After being struck by the cans Mrs. Jackson reported the incident to the assistant manager on duty, Karen Ashworth. Mrs. Ashworth discussed the incident with Mrs. Jackson and then requested that she fill out an accident report. Mrs. Jackson complied with this request and signed the report. Mrs. Jackson's statement regarding the occurrence of the accident consisted of the following:

"I was picking up some can [sic] goods and then the whole stack came down."

At trial Mrs. Jackson testified that she had not touched the cans in the display before they began falling. She stated that she observed that some cans had been removed from the middle of the display which caused cans to fall from the top row.
On cross examination, she was questioned about the statement set forth in the accident report which appeared to conflict with her trial testimony. Her explanation of the statement was as follows:

"Q. I show you a photocopy of a document that's entitled Statement of Customer ...
* * * * * *

"A.... Yes, sir...

*700 "Q.... and ask you, Brenda, if that's what you were handed, and if that's what you filled out...
"A.... (Witness reviews document.) Yes, sir; I've seen this one.

"Q. It contains what purports to be your signature at the bottom. Is that your ...
"A.... Yes, sir; it is.
"Q. And the writing under the printed in form, is that your handwriting?
"A. Yes, sir; it is.
"Q. It states, quote, I was picking up some cans and then the whole stack came down. Is that what it states?
"A. Yes, sir.
"Q. But you're stating now that you weren't picking up any cans, you were just looking at them; is that correct?
"A. I was in the process of buying some canned goods, but I had not picked up any cans at that point.
"Q. Did you tell Mrs. Ashworth that you had retrieved a can and the can came down or do you recall?
"A. I really don't remember.

"Q. Well, you wouldn't have told her that if that isn't what happened...
"A.... Sir?
"Q. There would be no reason for you to tell her that you had pulled a can out if that's not actually what you did, right?
"A. No. She asked me what ... what I was doing, shopping or what, and at that point I was very upset. I was bleeding. I was hurting."
Mrs. Ashworth testified that, after the accident, Mrs. Jackson came to her at the service desk and reported the accident. When asked what happened, Mrs. Jackson told this witness "that she was getting some groceries and the cans had fallen upon her." Mrs. Ashworth stated that she and Mrs. Jackson went to the area of the accident. Mrs. Ashworth stated that she found five or ten cans lying on the floor. She stated that she noticed that some cans had been removed from the middle rack, causing the upper cans to become dislodged. Her testimony in this regard was as follows:
"Q. When you looked at the display what was your purpose for looking over at the display?
"A. To see exactly where the cans had come from and how they had fallen.
"Q. What did you see, if anything, that suggested to you how they had fallen and why they had fallen?
"A. It looked like it had been pulled from the middle instead of the top.
"Q. Can you explain that any more... in any more detail?
"A. The way the cans are stacked, they are stacked in cardboard boxes on top of one another, and the way it looked like to me the cans were taken from the middle instead of the top box.
"Q. What would that do to the top box?
"A. It would make it fall if they were taken from underneath."
Mrs. Ashworth also testified that the method of displaying canned goods, that was being used at the scene of the accident, is a method that was commonly used in this store and other Kroger stores. She stated that the display was known as an "incap" display. She testified that she had not heard of any other incidents occurring with the "incap" display. This type of display was still in use at the time of trial.
The jury was presented special interrogatories and answered the first two as follows:

"1. Was the defendant, the Kroger Company, guilty of substandard conduct which proximately caused plaintiff's [Mrs. Jackson's] injuries?

_____ `x' 
 Yes No

"2. Did the defendant [Kroger] defectively stack its merchandise so as to create an unreasonable risk of harm to others?

_____ `x' 
 Yes No
Pursuant to the above findings by the jury the trial judge rendered judgment in favor *701 of the defendants and dismissed the Jacksons' demands and they appealed.
The issues presented by this appeal are as follow:
(1) Whether Jackson proved the existence of a "premise hazard," the proof of which would have been sufficient to shift the burden to defendants to exculpate themselves from a presumption of negligence; and
(2) Whether Jackson proved the existence of a "defect" under LSA-C.C. art. 2317 sufficient to justify the imposition of strict liability upon defendants and thus requiring defendants to establish one of the defenses applicable in 2317 cases.
From the jury's answers to the special interrogatories it is clear that the jury found, as a matter of fact, that plaintiff had not crossed the respective thresholds of either negligence or 2317 strict liability. We shall review the record to determine if the jury's factual findings were clearly wrong or constitute manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973). Only if we find such clear error in the jury's fact finding may we reverse.

EXISTENCE OF A "PREMISE HAZARD"
A "premise hazard" has been defined by the Louisiana Supreme Court to be a condition of the premises or of the store operation that results in an unreasonable risk of harm to customers under the circumstances. Johnson v. Ins. Co. of North America, 360 So.2d 818 (La.1978). It is only after facts sufficient to establish the existence of a premise hazard have been proven by the plaintiff that the burden, to exculpate himself from a presumption of negligence, shifts to the defendant-storekeeper. Kavlich v. Kramer, 315 So.2d 282 (La.1975).
Shortly after the Kavlich decision, the Supreme Court decided the case of Gonzales v. Winn-Dixie Louisiana, Inc., 326 So.2d 486 (La.1976). Like Kavlich, Gonzales was a slip and fall case. The court stated:

"In placing the duty of going forward with the evidence on the store owner, Kavlich announced no rule that the store owner insures a customer's safety. Under Article 2315 of the Louisiana Civil Code, fault is basic to recovery. If the evidence brought forward establishes that the store owner is free from fault, there can be no liability." (Emphasis in original.)
In Johnson, supra, a falling merchandise case with facts very similar to the instant case, the Supreme Court granted writs and reversed the Court of Appeal's affirmance of a trial court judgment in favor of Mrs. Johnson. Citing both Kavlich and Gonzales the Supreme Court reiterated that the burden only shifts to the storekeeper after the plaintiff proves the existence of a premise hazard. The Supreme Court used the following language:
"Our opinions in Kavlich and Gonzales shift the burden of proof to a store operator after a plaintiff has shown that a premise hazard caused his injury. Once the premise hazard and the injury it caused are proved by a preponderance of the evidence, the burden of proof shifts to the store owner to show that he was not negligent. But that shifting does not occur until the plaintiff preponderantly proves a premise hazard."
The question before us is whether the jury was clearly wrong in finding, based upon the evidence presented, that a premise hazard did not exist at Kroger's store when Mrs. Jackson was injured. To be a premise hazard the condition in question must represent a unreasonable risk of harm to customers under the circumstances. Mrs. Jackson was very familiar with the Kroger store in general and with the "cost-cutter" products, and their regular manner of display, in particular. Mrs. Jackson testified that, in addition to visiting the Kroger store almost daily, she normally purchased "cost-cutter" canned goods.
To recover under the premise hazard doctrine (negligence) Mrs. Jackson had the obligation of proving that the "incap" *702 method of display created a premise hazard. The evidence clearly reflects that the cause of the incident was the removal of cans from the middle of the display either by Mrs. Jackson or other customers (to the knowledge of Mrs. Jackson), which undermined the stability of the stack causing some cans to fall from the top rack. The jury, according to the evidence presented, would not be clearly wrong in concluding that Kroger was free of negligence in using the "incap" method of display. This assignment of error lacks merit.

EXISTENCE OF A "DEFECT"
To establish the liability of a defendant under LSA-C.C. art. 2317 a plaintiff must prove three things: (1) the thing was in defendant's custody; (2) the thing had a vice or defect; and (3) the injury or damage was caused by the vice or defect. It is undisputed here that the thing, the display, was in Kroger's custody and that Mrs. Jackson was injured. The jury found, and this is the factual finding which Jackson attacks, that there was no defect. We must determine if the jury was clearly wrong in their finding.
Jackson has cited two cases; Marquez v. City Stores Company, 371 So.2d 810 (La. 1979) and Williams v. Hempen, 396 So.2d 999 (La.App. 3rd Cir.1981), for the proposition that an "unusual occurrence" may prove the existence of a "defect." We take no exception to either of these cases; however, we find that they do not control the facts of this case.
Mrs. Jackson contends that, because the "incap" display is usually safe, the fact that merchandise fell at all is proof of some defect in this particular instance. We do not agree.
The Marquez case dealt with an escalator in a department store. The plaintiff's young son was injured when part of his tennis shoe became caught in the escalator. The Supreme Court said:
"[T]he fact that this escalator caught this child's shoe is an unusual occurrence in itself which would not have happened had this escalator not been defective....."
This circuit in Williams, a case which involved a large garbage dumpster overturning on a young boy, concluded:
"[t]he fact that this dumpster overturned for no apparent reason is an occurrence which would not have happened had it not been defective....."
As stated earlier we do not quarrel with either the rationale or the result of Marquez and Williams. However, that same rationale is not applicable in this case. There are plausible explanations for the fall of the merchandise other than the existence of a defect. These explanations have been previously set forth in this opinion.
The jury found that Kroger had not defectively stacked the cans which fell on Mrs. Jackson. Our review of the record does not convince us that the jury was clearly wrong in such a determination.
For these reasons the judgment of the trial court is affirmed. All costs of this appeal are to be paid by plaintiff-appellant, Mrs. Brenda F. Jackson.
AFFIRMED.