BARRY, Judge.
Plaintiffs allege a defect in their automobile caused an accident and sued for damages from General Motors Corp., the manufacturer, Bryan Chevrolet, Inc., the dealer who first received the car from General Motors, and Security Insurance Co., Bryan’s insurer. The Trial Court dismissed the lawsuit without assigning reasons and plaintiffs appeal only as to General Motors urging the Trial Judge committed manifest error.
Mr. and Mrs. Hingle purchased a 1974 Chevrolet “demonstrator” from Bryan on October 5, 1974. Mrs. Hingle testified that on April 19, 1975, before leaving a parking lot, she warmed up the engine approximately fifteen seconds. She then “barely” touched the accelerator and the car picked up speed into the path of another vehicle which hit her from the rear. This caused Mrs. Hingle to swerve, hit a median, and come to a stop in a drainage canal. She stated prior to the accident there were no brake or accelerator problems and she did not drive the car after the accident. She also stated she told the investigating deputy the accelerator stuck, but admitted she did not attempt to turn off the key or put the car in neutral in order to stop. Mrs. Hingle said she did not drive often and was sixty years old.
Mr. Hingle testified the Chevrolet had 5,000 miles when purchased as a demonstrator and the car had been driven approximately 7,000 miles when the accident occurred. He stated unequivocally there were no major problems (other than a transmission leak which was repaired by Bryan) prior to the accident. Mr. Hingle said Bryan repaired the car after the accident, but it was running “badly” so he took the car back to Bryan. Adjustments were made and it was running better, but he noticed the accelerator stuck two or three times. That was the first time he had any difficulty with the accelerator. He returned the car to Bryan who replaced the carburetor after which he experienced no difficulty.
Plaintiffs called Dennis Suarez who was qualified as an expert in automotive repairs. He took the air filter off the carburetor and noticed when the accelerator was depressed it didn’t release properly which caused a high engine idle. However, Suarez stated he did not inspect the carburetor and could not tell if its failure to properly release was caused by water damage from the accident. He did say, however, when the accelerator wasn’t depressed the engine did not continue to accelerate or speed up. His testimony convinces us his inspection of the car was casual, at best, and limited in scope.
Johnny Carlass, body and shop manager for Bryan, testified when Mr. Hingle first brought the car back after the accident he complained about the accelerator sticking. (This conflicts with Mr. Hingle’s testimony.) Carlass said he did not remember complaints about the carburetor before the accident: after the accident the carburetor was *649 cleaned, eventually replaced, and the car was in good condition.
Gilbert Watermeir, service manager for Bryan, was qualified as an expert in automotive mechanics. He stated warranty repair orders were kept for twenty four months and there was no record of complaints about the brakes, carburetor, or accelerator on the Hingle vehicle. He testified after the accident the carburetor was overhauled and replaced later. He said he viewed the vehicle after the accident before repairs. The front was heavily mudded from the drainage canal and the type of work on the repair sheet indicated the automobile had been submerged in water. Wat-ermeir opined if the carburetor was stuck open the motor would stay at the same speed, and if the accelerator stuck at full throttle the brakes were capable of stopping the car.
The investigative officer, Curtis Owens, said when he reached the accident scene the Hingle’s car was straddling the canal with the front and rear on the embankments. The front, rear and bottom of the ear was damaged, but he did not check the accelerator even though Mrs. Hingle told him it stuck prior to the accident. Owens testified he could not find skid marks or other evidence that Mrs. Hingle applied her brakes.
In order for General Motors to be liable, plaintiffs have the burden of proving that the product was defective, i.e., unreasonably dangerous to normal use, and that the plaintiff’s injuries were caused by reason of the defect. Weber v. Fidelity & Casualty Ins. Co. of New York, 259 La. 599, 250 So.2d 754 (1971).
Plaintiffs cite Hunt v. Ford Motor Co., 341 So.2d 614 (La.App. 2nd Cir. 1977) where the plaintiff’s steering wheel froze and the court stated:
“Accepting the fact that the steering wheel froze or hung up, it necessarily follows that there was a defect in the steering mechanism which caused the failure.. . It is not necessary for plaintiff to prove the precise nature of the defect—only that a manufacturing defect existed and that it caused the accident.” Id. at p. 618. (Emphasis in original)
However, Hunt is clearly distinguishable because there had been numerous prior experiences and documented evidence of problems with the steering wheel. The Hingle’s had no difficulty nor is there any documented evidence of accelerator or carburetor defects before the accident.
Plaintiff also relies on Vicknair v. T. L. James Co., Inc., 375 So.2d 960 (La.App. 4th Cir. 1979), writ denied 379 So.2d 10 (La.1980) Vicknair involved strict liability under C.C. art. 2317 because the defendant was custodian of the thing that caused the damage, regardless of negligence by the custodian. Loescher v. Parr, 324 So.2d 441 (La.1975). However, a manufacturer of a product (such as an automobile) which involves a risk of injury to the user is liable to any person, whether the purchaser or a third person, who sustains an injury caused by a defect in the design, composition, or manufacture of the article, if the injury might reasonably have been anticipated, but only when the purchaser or third person is without fault. Weber, supra.
The record shows that the Hingle’s drove their automobile approximately 7,000 miles without the accelerator pedal sticking. Mr. Hingle used the car after the accident and did not experience or complain of any abnormal sticking or acceleration, even though he returned the ear for service because the motor was “missing”. Only thereafter Mr. Hingle experienced the accelerator sticking: however, he continued to drive the vehicle without incident. It was almost six weeks after the car was repaired before a complaint was made concerning the accelerator.
Basically, the trial judge was confronted with Mrs. Hingle’s uncorroborated testimony concerning the accident. Plaintiffs had the difficult burden of proving the existence of a defect in their automobile and that the defect caused the accident. We feel the evidence is sufficient to sustain the Trial Judge’s finding that plaintiffs failed to establish their automobile was defectively manufactured and we will not disturb *650 that determination absent the “clearly wrong” principle of Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). The judgment of the District Court is affirmed with appellant to pay all costs of appeal.
AFFIRMED.