435 So.2d 1010 (1983)
Joseph SCIORTINO, Jr.
v.
Thomas L. ALFANO, Jr., et al.
No. 5-297.
Court of Appeal of Louisiana, Fifth Circuit.
May 17, 1983.
Writ Denied September 16, 1983.
*1011 Garland R. Rolling, Metairie, for plaintiff-appellee.
William J. Guste, Jr., Atty. Gen., Warren E. Mouledoux, First Asst. Atty. Gen., Jesse J. Marks, Harry H. Howard, Asst. Attys. Gen., New Orleans, for appellant-State of Louisiana.
Joseph F. Grefer, Gretna, for appellant-Thomas L. Alfano, Jr.
A.W. Wambsgans, Metairie, for appellants-Alwynn J. Cronvich, Sheriff; North River Ins. Co.; Intl. Surplus Lines Ins. Co.; The Sheriffs' Assoc. State of La.
Before BOUTALL, GAUDIN and GRISBAUM, JJ.
GAUDIN, Judge.
This tort action was instituted in the 24th Judicial District Court by Joseph Sciortino, Jr., who alleged that he received severe personal injuries as the result of being assaulted by an off-duty Jefferson Parish police officer, Thomas Alfano, Jr.
The trial judge rendered judgment in Sciortino's favor in the sum of $40,000.00. Cast in judgment jointly, severally and in solido were (1) Alfano personally and as a deputy sheriff; (2) the Sheriff of Jefferson Parish, Alwynn J. Cronvich; (3) North River Insurance Company, the Sheriff's insurer; (4) International Surplus Lines Insurance Company, another insurer of the Sheriff's Department; (5) the Sheriff's Association and (6) the State of Louisiana.
The judgment's actual wording is not clear with regard to the State, but the assigned "Reasons for Judgment" clearly indicate that the trial judge meant to include it among the defendants indebted to Sciortino. We will, therefore, treat the State as having been named along with Alfano and the others.
The judgment further limited the Sheriff's liability in accord with LSA-R.S. 33:1433, and dismissed Sciortino's claims against the Parish of Jefferson and Cronvich personally.
All defendants placed in judgment have appealed, while Sciortino is also before this Court asking for an increase in damages. Sciortino did not appeal from the ruling in favor of the Parish of Jefferson and Cronvich personally.
On review, we affirm the $40,000.00 judgment against all named defendants except the Sheriff's Association and the State of Louisiana. Sciortino's claims against the Sheriff's Association and the State are dismissed.

FINDINGS OF FACT
On October 20, 1977, Alfano was employed as a desk sergeant by the Sheriff's Office while Sciortino was a salesman at Levitz Furniture Company.
Alfano, in civilian clothes and not on official duty, went to the furniture store and located Sciortino. They then went into a small office.
Sciortino and Alfano gave conflicting testimony about what occurred next, and the trial judge made these findings:
"Defendant went to Levitz Furniture Company and sought out Sciortino since plaintiff had been the salesman who had the dealings with his wife. After entering *1012 the premises, defendant, Alfano, came into the employee lounge and asked plaintiff to step outside to discuss something. Defendant, Alfano, suggested to plaintiff that they seek a vacant office to talk in private and told plaintiff that plaintiff owed him Eighty-Five ($85.00) Dollars and he intended to collect it.
"Sciortino then told Alfano that he was going to get the manager and Alfano said `you're not going anywhere' and showed plaintiff his Jefferson Parish Deputy Sheriff commission and told plaintiff to show him his driver's license.
When Alfano started to use the telephone, Sciortino attempted to leave the room and was grabbed on the arm by defendant, Alfano, who forcibly hurled him against a refrigerator in the room and into a chair also located there, causing injury to the back of Sciortino. Alfano was thirty-two (32) years old at the time and was much younger and larger than Sciortino who was fifty-two (52) years old on the date in question.
"Earl Brown, an employee of Levitz, came into the room and Alfano told him that plaintiff had stolen money and was going to jail.
"Another employee of Levitz, Dale Atkins, also came into the room and Alfano asked him to show defendant his driver's license. Alfano was preparing to use the telephone again when Atkins advised him that he could not use the telephone but Alfano said he was commandeering the telephone anyway. Further, defendant advised Atkins that he would arrest him if he interfered.
"Defendant called his District Headquarters from Levitz. Defendant's supervisor, Sgt. Joe Torres, was dispatched to the scene. On arriving at the scene, Alfano told Torres that he was a victim of theft by fraud. Torres never saw plaintiff but was handed Sciortino's driver's license. Sgt. Torres determined the matter to be civil in nature and not a criminal one because he felt there was a serious lack of intent to deprive one of his belongings as required by LSA-R.S. 14:67. Torres further said the manager of Levitz attempted to make a complaint about defendant arresting his employees, but stated that defendant never indicated to him that he had arrested anyone."
After making these findings, the district judge concluded that while Alfano had gone to Levitz on a personal mission, he "... began acting in the course and scope of his employment as a deputy sheriff at the moment he began attempting to make a record check on plaintiff and detained plaintiff.... it was at this point in time that the civil encounter became an investigatory stop by a deputy..."
We cannot say that these determinations were clearly erroneous or that they lacked a factual basis, and we will not disturb them. See Canter v. Koehring Co., 283 So.2d 716 (La.1973); also, Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), in which the court, clarifying Canter, stated:
"... the appellate court should not disturb factual finding in the absence of manifest error."

SCIORTINO'S INJURIES
It is difficult for us, as it must have been for the trial judge, to fairly assess Sciortino's damages as he had several prior injuries to his back and was classified as twenty (20) percent disabled by the Veteran's Administration. The testimony of Dr. Melville Sternberg, an internist and one of the treating physicians, indicated that Sciortino was hurt as a result of this incident. He was twice hospitalized, his personality and attitude toward his work changed and he ultimately became unable to sustain his employment.
In addition to Dr. Sternberg, a number of other physicians expressed opinions, either via personal appearances at the trial or by having their depositions or statements stipulated into evidence.
Dr. R.C. Llewellyn, a neurosurgeon, said that Sciortino's lower back spasms were correlated to his complaints.
Dr. Masco Wakabayashi, a radiologist, said that Sciortino did have a disc problem and nerve root irritation.
*1013 In addition to physical complaints, Sciortino had emotional troubles. Dr. Eugene Dabezies, an orthopedist, said that while Sciortino had a sprain, "... there was considerable emotional overlay which seemed to be coloring the clinical picture."
Two psychiatrists, Drs. Gene Usdin and Edward Norman, testified. Dr. Usdin stated that Sciortino's pain and limitation of movement could have a psychogenic basis but he could not rule out the possibility of organic dysfunction, while Dr. Norman said that Sciortino had experienced an emotional reaction caused by trauma.
Dr. John D. Jackson, a neurological surgeon, said in his report:
"... after studying this patient and reviewing his x-rays I must state that I am unable to find any objective evidence of lumbar disc disease or injury or neurological dysfunction. At the time this patient was seen on 4/18/78 he advised me that he was planning to return to work on 4/22/78 on a part time basis to see if he could perform the work satisfactorily. I have not heard whether he was able to do this but I have every hope after examining him and studying his x-rays that he will be able to get back to work without any great difficulty. In my opinion this has been more of an emotional psychological illness than actual organic illness."
Sciortino attempted to show that all of his present physical and emotional problems were related to the sued-on incident and not to preexisting events, but obviously the trial judge was not fully convinced. Nonetheless, the tortfeasor takes his victim as he finds him,[1] and is responsible for injuries superimposed on existing physical and emotional conditions.
Only if the trial court has clearly abused its discretion should an award be raised or lowered. See Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977), and Reck v. Stevens, 373 So.2d 498 (La.1979).
Considering all of the medical testimony and evidence, we believe that the trial court could have awarded either a greater or lesser sum, but we cannot say that the award of $40,000.00 was in abuse of the wide discretion given the trier of fact.

DEFENDANTS CAST IN JUDGMENT
As Alfano did act within the bounds of his employment, he was correctly named in the judgment. The same is true with regard to the Sheriff, although his exposure is restricted by R.S. 33:1433 to the amount of the deputy's bond, as noted by the trial judge in his judgment.
However, the judgment did not restrict the liability of the two insurance companies; and on appeal, neither North River Insurance Company nor International Surplus Lines Insurance Company contended that its financial responsibility should be limited by either a statute or by the terms and conditions of its policy of insurance. The insurance companies argued only that the trial judge erroneously found that Alfano was acting as a police officer, and in this endeavor they did not prevail.
With regard to the Sheriff's Association, the record does not contain an answer filed by this defendant, nor does the record show that a preliminary default was ever entered. As the Sheriff's Association was not before the court, it could not be placed in judgment. Sciortino admitted this in his appellate brief.
Also inadvertently cast in judgment was the State of Louisiana. In Jenkins v. Jefferson Parish Sheriff's Office, 402 So.2d 669 (La.1981), the Supreme Court of Louisiana stated:
"No one but the sheriff can realistically be viewed as the employer of deputies."
Further,
"We conclude that the sheriff is the appropriate governmental entity on which to place responsibility for the torts of a deputy sheriff."
The State of Louisiana, therefore, cannot be held responsible for a deputy's tortious conduct.
*1014 Sciortino contends that at the time of his injury, the holding in Foster v. Hampton, 352 So.2d 197 (La.1977), was in effect and that deputies were considered employees of the State. However, the State was not a party defendant in this case, and the wording dealing with the State was dicta.
Later, Foster added the State as a party defendant, and this led to the second Foster decision, Foster v. Hampton, 381 So.2d 789 (La.1980). The Supreme court here dealt with prescription, concluding that Foster's original suit against the sheriff and other defendants did interrupt prescription against the State.
The second Foster case did not positively say that the State was liable, only that the State's preemptory exception was invalid and that it should defend against Foster's demands along with other defendants.
The Jenkins decree, we believe, placed the connection between a deputy sheriff and the State of Louisiana in proper prospective. The State, which neither hires deputies nor exercises any control whatsoever over them, can't reasonably be held liable for torts of a locally-employed parish deputy, the doctrine of respondeat superior notwithstanding.

CONCLUSION
For the foregoing reasons, we affirm the judgment in favor of Joseph Sciortino, Jr. and against (1) Thomas L. Alfano, Jr., individually and as a deputy sheriff, (2) Alwynn J. Cronvich, as Sheriff of Jefferson Parish, (3) North River Insurance Company and (4) International Surplus Lines Insurance Company, jointly, severally and solidarily, in the sum of $40,000.00, with legal interest from date of judicial demand, until paid, and all costs. The liability of Cronvich, as Sheriff of Jefferson Parish, is limited to the amount of the bond posted by Alfano.
We void and set aside the judgment against the Sheriff's Association and the State of Louisiana, and we render judgment in favor of these defendants and against Alfano, dismissing his demands with prejudice and at his cost.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
GRISBAUM, J., concurs.
GRISBAUM, Judge, concurring.
I concur in the result reached by the majority.
NOTES
[1] See Perniciaro v. Brinch, 384 So.2d 392 (La. 1980), and numerous other cases.