446 So.2d 1322 (1984)
John ROSS, Jr., Plaintiff-Appellant,
v.
Joyce K. LEWIS, et al., Defendants-Appellees.
No. 15994-CA.
Court of Appeal of Louisiana, Second Circuit.
February 21, 1984.
*1323 Simmons, Nelson & Dunn by Otha Curtis Nelson, Sr., Baton Rouge, for plaintiff-appellant.
McLeod, Swearingen, Verlander & Dollar by Richard A. Bailly, Monroe, for defendants-appellees.
Before HALL, FRED W. JONES, JR. and SEXTON, JJ.
HALL, Judge.
In this personal injury action, the plaintiff appeals from a trial court judgment rejecting his demands for damages resulting from the explosion of a car battery. We reverse and render judgment in favor of the plaintiff.
On August 25, 1980, defendant Joyce K. Lewis's automobile wouldn't start when she attempted to leave a residence where she had been visiting. She asked Gene Williams, also a visitor at the residence, to *1324 help her crank the car. She informed Williams that, on prior occasions when the car wouldn't start, she had been able to start the car after tightening the battery cables and/or tapping on the battery to firmly seat the cables on the posts. The appellee asked Williams to try tapping on the battery before resorting to jumper cables. Williams tapped the battery a couple of times but the car would not start.
The plaintiff, John Ross, Jr., was observing these events from his uncle's porch. Joyce K. Lewis had been visiting at the uncle's residence immediately prior to the accident. Plaintiff, in response to Lewis's request for aid, walked over to the car to see if he could assist in starting it. As plaintiff approached, Williams tapped the battery several times. Just as the plaintiff reached the front of the car and started to lean under the hood to ask what was wrong, the battery exploded.
The top of the battery struck the plaintiff in the face and knocked him backward some 12 to 15 feet. Battery acid splashed into the plaintiff's face and eyes. However, the injuries received by the plaintiff were minimal, consisting of some slight facial abrasions and very minor damage to plaintiff's eyes which quickly and totally healed.
On August 25, 1981, the plaintiff filed suit seeking recovery for his injuries and medical expenses from the defendant and her automobile liability insurer. Gene Williams was not made a defendant in this suit. After trial on the merits, judgment was rendered rejecting plaintiff's demands and dismissing his claim at his costs. This appeal followed.
In the trial court and on appeal, the plaintiff seeks recovery on the bases of both strict liability under LSA-C.C. Art. 2317 and the defendant's negligence. The trial court found Article 2317 strict liability inapplicable to this situation because no defect was proven. Furthermore, the trial court stated that, assuming the theory of strict liability was applicable, the accident was caused solely by the fault of a third party, Gene Williams, sufficient to constitute a defense against an Article 2317 cause of action. Additionally, the trial court ruled the accident was caused solely by Williams's actions and that the defendant, Joyce K. Lewis, was not negligent.
Article 2317 Strict Liability
On appeal, the plaintiff contends the trial court erred in failing to hold Lewis strictly liable in accordance with LSA-C.C. Art. 2317 for the injuries caused by a defective thing, the battery, in her custody. We agree.
In order to establish liability and the entitlement to recovery under Article 2317, the plaintiff must prove: (1) the thing had a vice or defect; (2) the thing was in the defendant's custody; and (3) the injury or damage was caused by the vice or defect. Upon proof of these elements, the burden shifts to the defendant to prove the damage was caused by victim fault, third-party fault, or an irresistible force. Loescher v. Parr, 324 So.2d 441 (La.1975). See also Kasperski v. Patterson Services, Inc., 371 So.2d 1254 (La.App. 3d Cir.1979). However, the plaintiff can be aided in carrying the burden of proving defectiveness by the showing of an unusual occurrence resulting in his injury. Marquez v. City Stores Co., 371 So.2d 810 (La.1979); Williams v. Hempen, 396 So.2d 999 (La. App. 3d Cir.1981); Vicknair v. T.L. James Co., Inc., 375 So.2d 960 (La.App. 4th Cir. 1979). This case furnishes an example of such an occurrence.
A thing is defective under Article 2317 if it presents an unreasonable risk of harm to others in its normal or ordinary use. Loescher v. Parr, supra; Benoit v. Ryan Chevrolet, 428 So.2d 489 (La.App. 2d Cir.1982) and authorities cited therein.
The trial court found the battery was not dangerous in the manner in which it was used. However, the court also found that the tapping on the battery by Williams was not an abuse of the battery. The court specifically noted that Williams's actions were in the nature of a minor adjustment of the battery and were performed by tapping on the battery with a *1325 wrench as opposed to striking a more forceful blow "with a hammer or some other foreign object." All indications in the record are that Williams was tapping on the battery posts and cables, as opposed to the battery casing itself, in an attempt to ensure proper contact between the posts and cables prior to the explosion.
The tapping of battery posts and cables in order to firmly seat the cables on the posts and to achieve good contact, as was done in this case, is a routine, ordinary, and normal procedure commonly employed in attempting to start an uncooperative vehicle, without the disastrous results which occurred here. The trial court specifically found this procedure was carried out in a reasonable manner in this instance. Nevertheless, the battery exploded and the most plausible explanation for the explosion is that the battery was defective.
Assuming the explosion resulted from Williams tapping on the posts and cables, since those actions were carried out in a reasonable, nonabusive manner, the defendants are not relieved of liability. The battery failed to function properly when its posts and cables were subjected to certain "tapping" adjustments designed to ensure a proper seating of the battery cables on the battery posts. The inability of the battery to withstand the type of contact it could be expected to routinely encounter renders the thing defective. See Robertson v. Gulf South Beverage, Inc., 421 So.2d 877 (La.1982).
The trial court correctly found the battery to be in the defendant's custody. Williams's actions were initiated by the defendant's request for aid and the tapping adjustments were suggested by the defendant and performed under her direction. She retained the right of direction and control over the battery and was the only person involved who was in a position to draw some type of benefit from the defective thing. Loescher v. Parr, supra. The record indicates that Williams and the plaintiff attempted to aid the defendant as an act of friendship with no thought or promise of remuneration. The record amply supports the trial court's determination that the defective battery was in the defendant's custody at the time of the accident.
It is unquestioned that the battery's explosion injured the plaintiff.
The defendants' possible defenses to liability in this case, victim fault and third-party fault, can be readily dispensed with. Williams's tapping actions were routine in nature and reasonably effected. Therefore, they cannot be said to constitute the fault of a third party sufficient to bar recovery. Nor can it be said that the plaintiff assumed the risk or was contributorily negligent in this case by walking up to the car and starting to lean under the hood where he was aware that Williams's routine and reasonable actions were in progress. Consequently, no act constituting victim fault was committed. Lacking any viable defense, the defendants must be held liable.
Quantum
The evidence establishes that the following medical expenses were incurred by the plaintiff as a result of the accident:

(1) Emergency medical treatment at
 Union General Hospital located in
 Farmerville, Louisiana........... $72.00
(2) Medication prescribed by treating
 physician....................... 13.82
(3) Follow-up examination by treating
 physician....................... 10.00
 ______
 TOTAL................................. $95.82

The plaintiff's claim for medical expenses resulting from treatment for a loss of hearing are denied because the expert testimony of the doctor who treated plaintiff for this ailment establishes that the damage to plaintiff's hearing did not result from the explosion of the battery. The plaintiff's claim for transportation costs to and from the hospital and the offices of the various physicians plaintiff consulted is denied because plaintiff presented no evidence such costs were actually incurred.
The evidence relative to plaintiff's claim for lost wages can be summarized as *1326 follows. The plaintiff testified that, by his calculations, he had lost $467.52 in wages from his full-time job with the Opportunities Industrialization Center of Ouachita and $112 in wages from his part-time employment with the Ouachita Mosquito Abatement District. No documentary evidence corroborative of his testimony was introduced. The plaintiff further testified that he missed approximately two weeks of work with each employer because his eyes remained irritated and very sensitive to the bright, summer sunlight. According to plaintiff's calculations, he lost 96 hours of employment from his full-time job and 32 hours of employment from his part-time job during this approximately two-week period.
However, Dr. Patterson, the physician who treated the plaintiff in the emergency room and examined him the day following the explosion, testified that the slight damage to plaintiff's eyes was rapidly healing and that plaintiff's condition should have returned to normal within approximately one week after the accident. He further testified that the plaintiff failed to keep an appointment for a follow-up examination scheduled for eight days after the accident. Additionally, while the plaintiff did consult an ophtalmologist 10 days after the explosion of the battery, plaintiff's vision complaint was determined to be unrelated to the damage his eyes suffered during the explosion of Lewis's battery.
Given these facts, we find the record does not support an award for two weeks lost wages in accordance with plaintiff's calculations. Rather, an award of approximately one-half the amounts plaintiff calculated is more appropriate since the evidence establishes that, more likely than not, the plaintiff had fully recovered from the injuries sustained in this accident within approximately one week following its occurrence. In his petition, the plaintiff claimed lost wages closely in accord with this determination in the amount of $328.72. Accordingly, there will be judgment in favor of plaintiff for that amount.
The plaintiff is quite fortunate in that he sustained no permanent disfigurement or vision impairment as a result of the accident. The facial abrasions plaintiff received were slight and the injury to plaintiff's eyes quickly and totally healed. As previously noted, the loss of hearing which the plaintiff identified as his major complaint at trial did not result from the battery's explosion.
The plaintiff was temporarily blinded by the accident for a period of several hours. Dr. Patterson testified that, when he examined the plaintiff in the emergency room shortly after the accident, the plaintiff was in a great deal of pain and distress about his eyes and face. He stated the plaintiff suffered a marked anxiety reaction to his injuries. Furthermore, the record indicates that the plaintiff's eyes were irritated and caused him discomfort for approximately one week after the injury was received.
In light of the circumstances, a general damage award of $2,000 in plaintiff's favor as compensation for the pain, suffering, and inconvenience he experienced as a result of this accident is warranted and will be made.
Decree
The trial court's judgment dismissing plaintiff's demands at his costs is hereby reversed and set aside. Judgment is hereby rendered in favor of the plaintiff, John Ross, Jr., against the defendants, Joyce K. Lewis and Commercial Union Insurance Company, in solido, in the amount of $2,424.54, plus legal interest thereon from the date of judicial demand until paid, and together with all costs of these proceedings including the cost of appeal.
Reversed and rendered.
SEXTON, J., concurs and assigns written reasons.
SEXTON, Judge, concurring.
This case highlights the wisdom of Professor Malone's analysis of the flaws in the concept of strict liability as enunciated by Loescher v. Parr, 324 So.2d 441 (La.1975). *1327 See Malone, Ruminations on Liability for the Acts of Things, 42 La.L.Rev. 979.
Common sense tells me that there is something wrong with a concept that renders liability to a defendant situated such as the owner and operator of this car. If she is like most persons, she probably has no knowledge of why it is the battery is able to provide power to start the car. Likewise, she undoubtedly has no idea what visual clues, if any, a dangerously defective battery presents. Furthermore, unless her knowledge of matters of this type exceeds that of this author, this is the first occasion that she knew it was remotely possible for a reluctant battery to explode without extremely violent treatment.
However, I must reluctantly agree that the circumstances of this cause fit the requirements of Loescheri.e., harm caused by a defective thing in the custody of the defendant. Furthermore, the defense did not show victim fault, irresistible force or third-party fault.
If Loescher has enduring viabilityand I agree with Professor Malone that it should notthen the definition of "defective" should mean a "vice" exposing another to an "unreasonable risk," as suggested in Loescher at one point. Malone, supra, at p. 982. The liability of the defendant would be "based upon his failure to prevent the person or thing for whom he is responsible from causing such unreasonable risk of injury to others." Loescher, supra, at p. 446 (Emphasis ours). Thus, if I must apply Loescher, then I would like to do so only when there is some failure to reasonably guard against a nonapparent defect, which defect poses a certain degree of risk of injury. Of course, such a definition has a tenor of negligence about it, and might not be an expansion of Article 2315.
Just as Professor Malone, I am "perplexed"but I am mandated to agree that Loescher and its progeny require this result.