Judith B. CURTIS

v.

Charles A. SHIVERS, United States of America.

Civ. A. No. 86–1826.

United States District Court, E.D. Louisiana.

Dec. 10, 1987.

mining any negligence or liability of any party.

Stanwood R. Duval, Jr., Houma, La., for plaintiff.

Thomas L. Watson, Asst. U.S. Atty., New Orleans, La., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BEER, District Judge.

This action was filed by plaintiff, Judith B. Curtis, seeking damages under the Fed-

eral Tort Claims Act, 28 U.S.C. § 2671, et seq. The injuries allegedly resulted from a collision between plaintiff's vehicle and a vehicle operated by U.S. Marine Corps Gunnery Sergeant Charles Shivers on West Main Street, in Houma, Louisiana on March 20, 1985, when the government vehicle which Shivers was driving veered into Curtis' lane of traffic. Plaintiff seeks damages for property damage to her vehicle, past and future pain and suffering both physical and mental, loss of past and future earnings, including impairment of earning capacity, permanent disability and incurred related medical expenses.

This matter was tried without a jury on November 19, 1987; was left open for possible settlement until November 30, 1987 and was thereafter taken under submission. After considering the evidence and applicable law, I make the following findings of fact and conclusions of law. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent that any of the conclusions of law constitute findings of fact, they are so adopted.

### FINDINGS OF FACT

1. The accident on March 20, 1985, resulted when Shivers' vehicle crossed into Curtis' lane of traffic, colliding with her vehicle.

2. At the time of the accident, Charles A. Shivers was in the course and scope of his employment with the United States Marine Corps as a recruiting sergeant.

3. At the time of the accident, Judith B. Curtis was a self-employed musician and singer, who had been working with her fellow performer, Mike Loupe, usually as a duet, for a period of several years.

4. At the time of her accident, Curtis had income from her entertaining engagements which was sufficient for her to live a moderate lifestyle as a result of living arrangements with Mr. Loupe. Little acceptable evidence was adduced to support a specific figure but I believe that it was less than $7,500 per annum, net.

5. Shortly after the accident, plaintiff developed headaches and numbness radiating down her left arm and into her left hand, which she reported to her family doctor. He advised her to consult Dr. Pete Rhymes, an orthopedic surgeon. Following an examination by Dr. Rhymes, plaintiff also saw Dr. Donald Judice, a neurosurgeon. Dr. Rhymes treated plaintiff for approximately eight months, July 1985 through March, 1986. He advised her not to perform as a musician, opining from her complaints that such could exacerbate her medical problems. Dr. Judice ordered a CT Scan and a myelogram, which showed some bulging in her C4–5, C5–6 and C6–7 cervical disc spaces. It was Dr. Judice's opinion that a fusion of the cervical spine should be done.

6. Thereafter, plaintiff saw Dr. Stuart Phillips, an orthopedic surgeon, who treated her from January 1986 to date. Dr. Phillips ordered a discogram performed on Curtis, which seemed to corroborate the findings of the CT Scan and the myelogram. Dr. Phillips opined that Curtis had a herniated disk and that the bulging of the C5–6 disk level was the result of the accident hereabove described. Initially, he was of the opinion that a fusion would be performed, but subsequently determined that a three level cervical discectomy should be done. It was his opinion that Curtis would have had more stiffness in the neck and experienced more loss of motion in the neck and possibly, lingering infection, were a fusion to have been performed. Dr. Phillips testified that plaintiff may continue to experience some pain since the fusion was not performed but described this as managable and non-disabling. Both Dr. Phillips and Dr. Judice give plaintiff a disability rating in the range of 20%.

7. The testimony of Dr. Andrew Wayne Martin, an expert in diagnostic radiology revealed that the bulging of the disk at the C5–6 level was caused by a combination of a preexisting bulge as well as tiny bone spurs, indicating sungilosis. Dr. Martin was of the opinion that the disk had created the defect in the area because it was larger than any bone spur.

8. Dr. G. Gernon Brown, Jr., an orthopedic surgeon who examined Curtis in February, 1987, prior to the surgery, found that her symptoms were that of a strain of the cervical spine. His opinion was that the "diminished touch" experienced by plaintiff's right hand was not compatible with a finding of a herniated disk. Rather, he opined that the bulging was caused by a degenerative condition of the disk narrowing, which he strongly believed existed prior to the accident. Dr. Brown stated that he would not have performed the tri-level cervical discectomy. He did not believe that it was necessary to remove three levels of the disk because of a bulge at one level. Dr. Brown stated that he believed that this operation opens patients to additional problems.

9. From the testimony presented, Curtis will have some modest restriction of motion and the possibility of managable periodic pain attendant upon weather changes or overexertion. Her recovery from the operation itself has, according to Dr. Phillips, been excellent. Despite some testimony to the contrary, I conclude that plaintiff is not, nor has she been, a "malingerer". During the period immediately before and after the surgery, Curtis was not fully able to perform as a musician or singer and also experienced some psychological depression. I believe that she has sustained some physical and mental pain and suffering from the time of the accident up until the present date. Although it appears that she is likely to be able to resume her career as a musician, she may not be able to move about and perform in as active and lively a manner as was her previous entertainment style.

10. The evidence is close as to whether or not the accident aggravated the plaintiff's preexisting degenerative disk condition. However, I think that plaintiff is entitled to the benefit of the doubt with respect to this question. Because of the chronology of the medical management of her condition, I find it more likely than not that the accident caused some aggravation of plaintiff's medical problem. This finding is consistent with Dr. Phillip's testimony. More likely than not, the circumstances of the accident aggravated a preexisting degenerative disk condition that plaintiff had, causing a arguable need for the surgery performed by Dr. Stuart sooner rather than later, perhaps, later.

11. Curtis sustained damages to her vehicle in the amount of $2,500.00 and was caused to expend on the order of $23,000.00 in medical, hospital and related expenses.

## CONCLUSIONS OF LAW

1. This court has jurisdiction over this matter under the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq.

2. Charles A. Shivers was in the course and scope of his employment as a gunnery sergeant in the United States Marine Corps at the time of the accident on March 20, 1985.

■ 3. More likely than not, the accident of March 20, 1985, was caused by the negligence of Charles A. Shivers, an employee of the United States Government and/or the negligence of the United States Government, and/or strict liability of the United States Government in improperly maintaining or owning the vehicle being driven by Charles A. Shivers which was defective. *United States v. Springfield, et al.*, 276 F.2d 798 (5th Cir.1960). La.Civ. Code Ann. art. 2317 (West 1987); *Ross v. Lewis*, 446 So.2d 1322 (La.App.2nd Cir. 1984); *Sikes v. McLean Trucking Co.*, 383 So.2d 111 (La.App. 3rd Cir.1980).

■ 4. The negligence of the defendant caused injuries to the plaintiff, and the defendant is liable in damages to the plaintiff for the personal injuries and property damage she sustained as a result of her accident.

■ 5. The components and measure of damages in Federal Tort Claims Act suits are taken from the law of the state where the tort occurred. *Simpson v. United States*, 322 F.2d 688 (5th Cir.1963); *Ferrero v. United States*, 603 F.2d 510 (5th Cir.1979); 28 U.S.C. § 1346(b).

■ 6. The tortfeasor must take the victim as he finds him or her, and the

tortfeasor is responsible for the injury superimposed on existing physical conditions. *Sciortino v. Alfano,* 435 So.2d 1010 (La. App. 5th Cir.1983), *writ den.,* 437 So.2d 1149 (La.).

 7. The opinion of the treating physician who has been in close contact with the patient over a period of time, here Dr. Phillips, is entitled to considerable weight, perhaps more than the equally well qualified physician who had examined the patient preparatory to giving an expert opinion regarding the patient's condtion but has not treated her. *Swann v. City–Parish,* 492 So.2d 1225 (La.App. 1st Cir.1986).

8. Accordingly, judgment is rendered in favor of plaintiff against defendant in the total amount of $75,000 (which includes all damages) plus costs and interest from the date of judicial demand. Counsel for plaintiff is to prepare the judgment consistent with the above findings.